Duer, J.
This is a case of the first impression; it is also a case of far more than ordinary importance ; it is so, not merely, nor principally, from the magnitude of the sum in controversy, but far more from the real difficulty and wide application of the questions which it involves : these questions have, by all of us, been diligently examined and considered, but I regret to say that we have been unable to arrive at the same conclusions. A final judgment, however, so far as this court is concerned, will now be pronounced.
The preliminary questions covered by the appeal, we think, were rightly decided at special term. The clause in the first codicil relative to future advancements to be made by the testator for persons or purposes provided for in his will and codicils, we think, ought not to be limited to the provisions in his will, and in the codicil, in which the clause is found, but was intended, and must, therefore, be construed, to embrace all provisions that might be contained in any future addition to his will; it is, therefore, applicable to the bequests in the second codicil. We are also of opinion that the re-execution by the testator of the will and codicils in 1845, amounted in judgment of law to no more than a republication, having no influence whatever on the questions it will be necessary to determine, nor do we think, that those questions are at all affected by the form in which probate was granted; the sentence of the Surrogate must be read in connexion with the evidence on which it was founded, and its true construction, therefore, is, that he admitted the will and codicils to probate upon the proofs before him of their original, as well as of their re-execution. On these points .we all us of agree with the opinion of the judge at special term, *541 and as we are satisfied with the reasons which he has given, we deem it useless to repeat them.
I pass, then, to the- questions which involve the merits of the controversy : These are, whether the bequest made to the plaintiff, in the will, of the income during her life of $100,000 of the city debt, and the similar bequest to her in the second codicil of the income of $100,000 deposited with the Hew York Trust Company, have been, or whether either of them has been, adeemed or satisfied by the advancements subsequently made to her by the testator, and charged by his direction in his books of account?
Although the words “ademption” and “satisfaction” and the corresponding words “ adeem” and “ satisfy” are frequently used by judges and text-writers as convertible terms, having the same signification, yet, as Hr. Justice Harris (9 Barb. p. 56) has truly observed, each, in its technical application to the provisions of a will,- has a distinct and appropriate meaning; “ ademption,” in its strict sense, being predicable only of specific, and “satisfaction” of general legacies. It is this distinction that I shall be careful to observe throughout this opinion, as I cannot but think, that a good deal of confusion in the argument, and in the application of cases, has arisen from its neglect.
The proper determination of the questions that I have stated, it will be seen hereafter, depends very much upon the construction to be given to those new provisions in the Revised Statutes, by which wills of personal property are required to be executed and attested in the same manner, and are subjected to the same rules, as wills of real estate; but in this, as in many other cases, in order that the new statutory provisions may be properly understood and applied, it is necessary to have a clear understanding of the law, as it previously existed. The first inquiry, therefore, upon which I propose to enter is, whether, independent of the provisions in the revised statutes, and also of the special clause in the first codicil, relative to advancements, the transfer of stocks made by the testator to W. Bv Astor, in trust for the plaintiff, would be held to be an ademption or satisfaction of the legacies in question, or of either of them.
*542 As the testator has, in effect, said, that no advances made by him, not charged in his books, should have any operation on the provisions in his will, it may be thought that the whole controversy turns upon the validity and construction of this clause, and the sufficiency of the charges actually made, and hence the proposed inquiry, at first view, may seem to be immaterial ; but the inquiry is, in truth, material and necessary, not only for the reason I have already given, but for those which I shall proceed to state.
It is one of the grounds of the decision, at special term, that without any reference to the special clause relative to advancements, or to the charges in the books, the legacies to the plaintiff were, in fact, discharged by the testator in his lifetime, by the transfer which he made of the stocks, which they embrace, or of stocks of equivalent value, in trust for her and her children ; in other words, that the satisfaction of the legacies in question was a necessary legal consequence of the transfer, and whether the judgment at special term can be sustained upon this ground we are, therefore, forced to consider. But admitting, as I certainly believe, that ultimately the case will be found to depend, exclusively, upon the validity or construction of the special clause relative to advancements, it is still material to inquire into the state of the law as it existed when the revised statutes were adopted, as well as into the effect of the new statutory provisions. If the doctrine, which has prevailed in courts of equity in England, that a gift from a parent to a child is a satisfaction, in whole or in part, of a prior bequest, was then in force, and has not been abrogated, the validity of a clause which merely restricts the effect of future advancements is, perhaps, scarcely liable to dispute; while upon the contrary supposition, we may find ourselves obliged to hold that it is illegal and void. The inquiry, therefore, has been rightly considered, both by the judge at special term and by the counsel of the parties, to lie at the foundation of the whole discussion.
In order to determine the question which it involves, the true character of the legacies in question, as general or specific, must first be ascertained; if specific, and the identical stocks (considering for the present the deposit in the Trust Company *543 as stock), to which alone they apply, were transferred by the testator in his lifetime, there is an end of the controversy, since the plaintiff, manifestly, cannot claim under the will, that which formed no part of the testator’s estate at the time of his death ; she cannot claim from the executors that which she, or her trustee, already has; but if the legacies are general, and as such may now be satisfied from the estate, the claim of the plaintiff can only be defeated by showing that they were, in fact, satisfied by the testator before his death, and that his intent to satisfy them is established by evidence upon which we are bound to act.
The distinction between a general and specific legacy, in their definition and in their consequences, I shall endeavor to state in a few words : A legacy is general, where its amount or value is a charge upon the general assets in the hands of the executors, and where, if these are sufficient to meet all the provisions in the will, it must be satisfied; it is specific, when it is limited to a particular thing, subject, or chose in action, so identified as to render the bequest inapplicable to any other— as the bequest of a horse, a picture, or jewel, or a debt due from a person named, and, in special cases, even of a sum of money. When the legacy is specific, it is manifest that it is defeated in all cases, where the subject, to which alone it can be applied, is not in the possession of the testator at the time of his death, whether it has been destroyed, or sold, or given to a third person, or to the legatee; as its subject is taken away, the legacy, by an easy figure, is said to be adeemed: But in these cases the legacy is not defeated, because it has been revoked by a manifested change of the intent of the testator, but because an event has happened, or an act been performed,* which, without any reference to his intention, renders its completion by the delivery of the thing bequeathed no longer possible; a specific legacy thus adeemed can with no *544 more propriety be said to be revoked, that is, recalled and rescinded by the testator, than a general legacy can be said to be revoked, when from the deficiency of assets there is no fund applicable to its payment; in both cases, the legacy is-defeated, for the simple reason, that there is no longer a subject upon which it can operate.
It follows from the definition of a general legacy, that it is not necessarily extinguished by a subsequent gift from the testator to the legatee of an equal or greater amount or value; the legacy and the gift are entirely consistent; the latter may have been intended as a bounty as well as the former. The gift may be retained, and the legacy still be discharged from the general assets; its discharge by anticipation is no more a necessary consequence of a gift from the testator than of a similar gift from a stranger.
Hence, if the legacies now in question are general, there is an evident fallacy in the assertion that the plaintiff can have no title to the relief which she seeks, because the very stocks bequeathed to her were delivered by the testator in his lifetime to a trustee for her benefit. It may be true, that stocks corresponding with the description of those bequeathed were so delivered, but it is just as true, that stocks equally corresponding with this description, may have been embraced in a trust created for her benefit by a stranger; the creation of such a trust, however, is no more a necessary bar to the relief which she seeks, in the actual case, than in the case I have supposed. If the legacies, as general, are a charge upon the general personal estate, that estate may still be responsible for their payment.
It is not meant to be denied (assuming for the present that the law upon this subject is unchanged), that when it is proved that in making a subsequent gift, it was the intention of the testator to annul a prior legacy and substitute the gift, a court of equity is bound to carry this intention into effect, by holding the legacy to be satisfied ; all that is now meant to be asserted is, that the question of the satisfaction of a legacy, in every casé in which it . can properly arise, is a question of intention, and of an intention necessary to be established by legal evidence. The vital distinction between the ademption of a spe *545 eific and the satisfaction of a general legacy, is exactly this, that in the first case, proof of the intent is immaterial, and in the second is essential. (1 Roper (by White), 238.)
From the remarks that have been made, the necessity of fix-' ing the character of the legacies in dispute is believed to be apparent. Both the legacies, in my judgment, are general; they are so from the terms of their creation, and if these are doubtful, they are rendered so by a special provision in the will.
As the legacies differ in their, nature, and in the terms in which they are expressed, they require to be separately considered. The first bequest (that made by the will) is of the income, during life, of $100,000 of the debt of the city, bearing an interest of five per cent., and the question, whether it is general or specific, it may be admitted, is exactly the same as if there had been an absolute gift of the capital, instead of a qualified gift of the income ; it is also a bequest of stock, as certainly as if the debt referred to had been that of this State or of the United States. Every legacy of stocks, which are particularly described, it may, at first, be thought is specific, and as such, confined to stocks, which the testator held at the date of his will, and continued to hold at his decease. The opposite construction, however, must be considered as fully established. Such a legacy, it is settled by many decisions, must be considered as general, unless the intention to render it specific is manifested, by confining it to stocks, then belonging to the testator; it is not rendered specific merely by the fact that stocks answering the description were then owned by him ; it must clearly appear, from the terms of the bequest, that to these, and to these alone, it was intended to apply. (Sibley v. Perry, 7 Ves. 523; Shirley v. Potter, 4 Ves. 748; 1 Roper (by White), 157, 163.) Nor is this to be deemed an arbitrary construction : it is in all cases a reasonable presumption that the testator never meant that his bounty should depend upon the circumstance of his retaining the identical stocks in his possession until his death, and clear evidence to repel this presumption is therefore justly required. I select for illustration two of the leading cases cited by the judicious Roper. In the first (Partridge v. Partridge, Forrest, 226; 1 Roper, 158), the testator bequeathed to his wife, for her life, £1,000 South Sea stock; *546 when he made his will, he was possessed of £1,800 of this stock, which he afterwards reduced by transfer to £200, subsequently he increased this amount by purchase to £1,600, which he held at the time of his death. The question was, whether the legacy was general or specific: if specific, then the reduction of the stock to £200 operated pro tcmto as an ademption, and it was only the reduced amount that the widow would be entitled to receive; but if general, -she was entitled to the full amount of the bequest. Lord Talbot (then Lord Chancellor) held that the bequest was descriptive only of the nature of the thing given, and was not limited to the particular'stock of which the testator was possessed when he made his will; considering the legacy, therefore, as general, he decreed its full satisfaction.
The second case (Brondson v. Winter, Ambler, 57) is still stronger. The testator bequeathed the sum of £2,000 capital stock in the South Sea Company to B. and C.; when he made his will, he was possessed of this amount of the stock described, and no more; he afterwards sold out £1,500, retaining the balance (£500) at the time of his death, and the question was, whether the deficiency should be made good to the legatees from the general assets, which, it could not be, unless the legacy was construed to be general. The Master of the Rolls determined that it was general, and that there being no words in, the will itself to render it specific, it was not rendered so merely by the circumstance that the testator, when he made his will, held the precise quantity of stock which he bequeathed. (Ambler, 57 ; see also Purse v. Snaplin, 1 Atk. 415 ; Bishop of Peterborough v. Mortlock, 1 Bro. C. C. 565 ; Webster v. Hale, 8 Ves. 610; 1 Roper, 163.)
In the case before us, the testator, when he made his will, held more than $100,000 of the city debt, but there are no words in the will referring to the stock as then in his possession, and identifying it as the subject of the bequest. The case, therefore, is not distinguishable from those to which I have referred, and it is a necessary conclusion that the legacy, from the terms of its creation, is general.*
The question as to the second legacy is perhaps more doubt *547 ful. The bequest is, of the income of $100,000 deposited with the Hew York Life Insurance and Trust Company, and bearing an interest of five per cent, per annum; and as the words must doubtless be construed as referring to an actual existing deposit, this circumstance, in conformity to the rule which I have stated, might be deemed sufficient to render the legacy specific; but this is by no means the necessary, nor as I think the reasonable construction. The whole bequest is of $100,000 (the income to the plaintiff during her life, and the capital at her death to the children named) considered as a sum of money, and the authorities justify the assertion that the deposit of that sum with the Trust Company is referred to, either as the primary fund for its payment, or as descriptive of its actual situation, without any intention of making its continuance in that situation a condition of the bequest (1 Roper, 169); and upon either supposition the legacy is general. The cases of Savile v. Blacket (1 P. Will. 178), Mann v. Copeland (2 Madd. 223), Roberts v. Pocock (4 Ves. 150), and Sadler v. Turner (8 Ves. 617), favor the first construction; and those of Raymond v. Broadbelt (5 Ves. 199), Coleman v. Coleman, (2 Ves. 639), Gillaume v. Adderley (15 Ves. 385), and Le Grice v. Finch (3 Mer. 50) seem to me nearly conclusive in support of the second. In this last case the legacy was of £500, described as then “ out upon mortgage;” the mortgage was paid to the testatrix during her lifetime ; and the question was whether by this payment the legacy, as specific, was not adeemed; Sir William Grant held that it was not; that the legacy was general, of a sum of money, the security being only mentioned as descriptive of its then situation; the money, not the security, being the subject of the gift. There is a striking analogy between this case and that before us. The deposit with the Trust Company created a debt, of which the certificate of the Company, then held by the testator, was the evidence. The bequest, however, is of the sum of money represented by the certificate, not of the certificate itself; and it is difficult to believe that the testator intended that the payment of the certificate should' operate to extinguish the legacy; yet, if he intended the legacy to be specific, such was his meaning. Judging of his intention from the terms of the whole bequest, it seems to me evident that the *548 legacy was meant to be a permanent provision, not liable to be defeated by the contingency I have supposed. The meaning was, that the plaintiff should enjoy the income of the $100,000 bequeathed during her life, and that the whole capital should pass to her children upon her death, whatever might be the situation of the fund, or the form of its investment, at the time of his own decease. The certificate of the Trust Company was payable in October, 1847 ; had the testator retained its possession, it would have been paid to him in his lifetime, and upon his death, the question whether this payment operated as an ademption of the legacy would necessarily have arisen. Its ademption, in the case supposed, could only have been prevented by holding the legacy to be general, and if such would then have been the construction, such must be the construction now. If the testator meant that the legacy should attach not merely upon the debt due from the Trust Company, but upon its proceeds, this intention was alone sufficient to convert what otherwise might have been a specific, into a general legacy; and to attribute to him a different intention, it seems to me, would be most unreasonable. (9 Ves. 360 ; Earl of Thomond v. Earl of Suffolk, 1 P. Wms. 462.) I am, therefore, of the opinion that the second legacy, as well as the first, is general by the terms of its creation.
It has, however, been insisted, that although the legacies in question, from the terms in which they are expressed, may be held to be general, they are rendered specific by a special clause in the eleventh subdivision of the will, in which the testator provides, “ That in case any of the stocks or funds therein specifically bequeathed should not be in his hands at his decease, the several bequests should be made up by purchases at the expense of his estate, of stocks or funds of the same, or a similar kind.” As this clause, by a provision in the fifth codicil, is extended to bequests made by the codicils, as well as by the will, it is contended that it embraces both the legacies in question ; and in support of the position that its necessary effect was to convert these legacies, if general, into specific, we were referred to the decision of the Vice-Chancellor in Townsend v. Martin (7 Hare, 471), as an express and controlling authority. I do not mean to deny that this special clause may justly be *549 construed to embrace the legacies in question, but the position founded upon it is, in my judgment, so far from being true, in the extent to which it was urged, that, had the legacies been in terms specific, I should not have hesitated to say, that the necessary effect of the special clause in the’will was to render them general; general, I mean, so far as the question of ademption or satisfaction is concerned, which is the only question I am now considering. In considering this question, it seems evident that every legacy must be deemed general, which, in the event of a deficiency of the stocks or funds which it particularly describes, is to be made good from the general personal estate, for the plain reason that such a legacy is not susceptible of ademption in the proper sense of the term; that is, is not liable to be defeated merely by the non-existence of its particular subject, as a part of the estate of the testator at his decease. Hence a subsequent gift to the legatee of the particular stocks or funds which the legacy describes, no more necessarily operates as an ademption than a sale or transfer to a third person, since in the one case, as well as in the other, the bequest may be made good by the executors, from the general assets in their hands, or under their control. Whether the gift may not in some cases be held to operate as a satisfaction of the legacy, is a different question, but a question which it must not be forgotten depends, in all cases, upon the intention of the testator, and in none, merely upon his act. We have indeed been told, that the special clause in the will ought not to be construed as applying to a disposition by the testator of stocks or funds bequeathed in favor of the legatee, but that we are bound to say, that its sole design was to "prevent an ademption of a legacy by a sale or transfer of its subject to another person ; but I have looked in vain for any words in the clause that can warrant this limited interpretation, and justify us in saying that the testator meant to impose upon himself an unreasonable restriction. We have no right to say that he meant to deprive himself of the power of giving to a legatee the stock or fund bequeathed to him, as a cumulative bounty, not affecting, far less extinguishing, the legacy; yet, if each bequest, as specific, was liable to ademption, such must have been the consequence of the gift, with whatever intent it was *550 declared, and proved to have been made. I do not at all question the propriety of the decision in Townsend v. Martin. It is sustained and justified by the prior cases of Fontaine v. Tyler (9 Price, 94), and Queen’s College v. Sutton (12 Simons, 52). Hor can it be denied, that in each of the cases, a general legacy of stocks was held to be specific, solely in consequence of a power given to the executor to replace stocks by purchase, in case they should not be in the possession of the testator at the time of his death; yet; in neither case, was the actual decision at all in conflict with the observations I have made, for the plain reason, that in neither did the question relate to the liability of the legacy, as specific, to be adeemed. It is not necessary to state those cases particularly, but when examined, the doctrine upon which they proceed will be found to be this, and no more than this—that a legacy may be specific for one purpose, or in one aspect, and general in another; specific, as entitled to immediate satisfaction, or not liable to abatement, and yet general, as not liable to ademption; a doctrine recognised and established in numerous cases, in which the legacies have been held to be general, and applicable in all, when a legacy, general in its terms, is charged upon, or payable out of, a specified fund. In these cases, if the fund exist at the death of the testator, the legacy attaches directly upon it, and, as specific, is entitled to precedency in payment, and is not liable to abatement; if the fund do not exist, the legacy, as general, is a charge upon, and must be satisfied from the general personal estate (Roberts v. Pocock, 4 Ves. 149 ; Raymond v. Broadbelt, 5 Ves. 199; Smith v. Fitzgerald, 3 Ves. and Beames, 2; Acton v. Acton, 1 Mervale, 178, 1 Roper, 181; Baker v. Raynor, 5 Madd. 217). Thus, in Fontaine v. Tyler, where the legacy was held to be specific, because the stock remained in the hands of the testator at the time of his death, the Chief Baron expressly said, that had the stocks been previously disposed of, he would have had no difficulty in holding that the legacy was pecuniary, an equivalent term to general. I close, then, this branch of the discussion, with the entire conviction that the legacies in question are general, in this sense; that they may be, and (throwing out of consideration, for the present, the provision relative to advancements) are entitled to be *551 satisfied from the residuary personal estate, unless we shall he obliged to hold that they have been satisfied in anticipation by the trust created by the testator, for the benefit of the plaintiff and her children, and this merely on the ground, that the trust embraced $100,000 of a city debt, and an equal sum deposited with a Trust Company; that is, embraced property, corresponding in description and in value with that specified in the legacies.
Before I proceed, it is proper to state what are the consequences of holding a legacy, similar to those in question, to be general. When a legacy relates to stocks, and stocks answer-, ing the description have passed into the hands of the executors, it will be their duty to satisfy the legacy by a transfer, absolute or in trust, according to the direction of the will; if there are no such stocks, they must invest by purchase a corresponding amount, or, when the legacy is absolute, pay an equivalent sum to the legatee. When the legacy refers to a particular debt as the primary fund for its payment, the debt, if unpaid, must be collected, if it has not been paid to the testator, or if not collectable, a sum corresponding with its amount must be paid to the legatee, or be invested for his benefit. Hence every general legacy, as the application of a sum of money may be necessary to its satisfaction, is pecuniary in its nature, and is frequently so denominated (Bishop of Peterborough v. Morlock, 1 Bro. C. C. 565; Fontaine v. Tyler, ut supra), and hence, also, if the legacies in question have not been satisfied, the plaintiff will be entitled to the exact relief sought in her complaint.
II. The next inquiry then is, whether it is, in all cases, a presumption of law, that a general or pecuniary legacy is satisfied by a subsequent gift from the testator to the legatee of an equal or greater amount or value. If the bequest is of money, is it satisfied by a subsequent advance of the sum ? if of stocks, by a transfer of the same or similar stocks ? or by an advance in money equivalent to their value ? without any other proof in each case, of the intent of the testator so to satisfy the legacy, than that which is derived from the gift itself. The necessary reply to the inquiry is, that there is no such general presumption ; but that, on the contrary, the opposite rule is that which *552 is general. Hot only when the legacy is to a stranger, but where the legatee is a near relative of the testator, a brother, or sister, or grandchild, the subsequent gift is held to be an additional bounty, not a satisfaction; it is cumulative upon the legacy, not a substitute for it; nor is that which is known to the recipient only as a gift, ever construed to be a payment— since, in the plain language of Roper, “ There is no reason why a person should not be entitled to as many gifts as his benefactor may choose to bestow” (1 Roper, 266). It seems to me that this is good sense, as well as sound law, and that it is just as applicable to a subsequent gift, inter ñivos, as to an additional gift in the will itself, or in a codicil. In the case before us, the gift in the second codicil of $100,000, deposited with the Trust Company, corresponds in value and income with the gift in the will of $100,000 of the City debt; but it is not pretended that the second was designed, or could be admitted to operate as a revocation, by satisfaction, of the prior bequest. Such, however, had the second bequest been an immediate gift from the testator in his lifetime, we are required to believe, would have been, in the absence of counteracting proof, its necessary legal effect; and applying the principle to the actual case, it is contended, that by the creation of the trust which conveyed substantially the same benefits to the plaintiff and her children, we are bound to say, that both the legacies were satisfied. It is not denied that the general rule is such as I have stated, but it is asserted that an exception, embracing the present case, is fully established; that in a court of equity it is settled law, that a subsequent gift from a parent to a legitimate child is presumed to have been made in satisfaction of a former legacy, and that this presumption can only be repelled by positive evidence of an opposite intent.
It must certainly be admitted, that for nearly two centuries past, this doctrine has prevailed in the courts of equity in England; the cases are numerous; their import unquestionable ; where the legacy is to a natural child, a subsequent gift, however large the amount, has no effect upon its validity, but when the child is legitimate, the gift ¡n'imá, faoie extinguishes the legacy, and according to many of the cases, such is the effect, even where the advance is much less in amount or value *553 than the bequest (18 Ves. 151; Prec. Ch. 182 ; 2 Atk. 578; 2 H. B. 220 ; 1 P. Will. 681). Even under these circumstances the advance is presumed to be a full discharge of the parental debt (1 Rop. 257). But although this doctrine must be considered in England as settled law, it is by no means a necessary consequence that courts of justice in this State, without any inquiry into the reasons upon which it is founded, have at any time been bound to follow it. It is not alleged, that in our own courts there has been any express decision of binding authority in which it has been recognised, nor has it been attempted to show that its intrinsic merits commend it to our adoption ; it is scarcely pretended that, as just and reasonable in itself, it has any claim to our obedience. The doctrine has in truth so little foundation in reason or equity that it may be considered, and is confessed by eminent jurists to be, purely arbitrary. The rule which it prescribes is pointedly condemned by Lord Thur-low, as resting “ on a vague and uncertain presumption” (Cookson v. Ellison, 2 Bro. Ch. Ca. 220); and it is plain, as Lord Eldon has observed (7 Y es. p. 515), that had it been res integra, he would have refused to -follow it. It is censured by Lord Eldon himself in still stronger terms as an “ arbitrary rule, in the application of which legitimate children are very harshly treated” (Ex parte Pye and Dubost, 18 Ves. 151) ; and Mr. Justice Story, disposed, as he certainly was, to uphold and vindicate every doctrine which he thought to be established by decisions in England, confesses of this, “ that it rests upon entirely artificial reasoning, which an ingenuous mind would find it very difficult to follow” (2 Story Eq. Jur. § 1103). It must be owned, however, that this learned jurist, notwithstanding these strictures, considers the doctrine too firmly established to be liable, at this day, to question or dispute; yet I must be permitted to doubt whether, since the adoption of the revised statutes, courts of justice in this State are under any obligation, or indeed are at liberty, to follow it. I do not now refer to those provisions in the revised statutes, by which wills of personal are placed on the same footing as those of real estate, since it is apart from these provisions that this inquiry is now conducted. I refer to a section in the revised statutes of much greater importance and far wider application than has com *554 monly been supposed, and I am glad to have this opportunity of directing the attention of the profession to its real significance ; it is the section which makes it the duty of courts of justice, in the construction of every instrument in writing relative to lands, “ to carry into effect the intent of the parties so far as such intent may be collected from the whole instrument, and is consistent with the rules of law” (1 R. S. p. 748, § 2); and it is material to observe that the revisers, in their notes to this section, say that its object was to make the real intention in all cases, and in all courts, the paramount and governing rule of interpretation, thus applying to deeds and wills the same rule that has always prevailed in the construction of personal contracts (3 R. S., 2d ed., notes of Rev., p. 601-2). I am aware that it has been frequently said, and, in some instances, from the Bench, that this section is simply declaratory, and that it has at all times been the duty of judges, even in the construction of deeds, to carry into effect the intention of the parties, when consistent with the rules of law; but the assertion has certainly been made without due reflection ; it is not easy to be reconciled with the words of the section, and overlooks entirely the reasons that were assigned for its adoption ; it confounds rules of construction with rules of law, and the technical meaning of words, with that which they are really intended to convey; and it is to this confusion alone, undetected, that it owes its semblance to truth. The assertion is manifestly groundless, if understood as meaning that the actual intention, that which the mind conceived and the words, it was believed, expressed, has not, in numerous cases, been set aside and wholly defeated, not as inconsistent with the rules of law, but with those alone of a technical and arbitrary construction. Of this no clearer proof can be given than results from the fact, that in many cases the same words were differently construed, according to the character of the instrument in which they were, found, or of the tribunal in which the question arose. Thus, for example, the same words which in a will were sufficient to pass the fee, in a deed passed only an estate for life ;* *555 and a limitation so expressed, that in a court of law it was held to be illegal and void, in the court of Chancery, when the aid of that court was required to carry it into execution, was so construed as to render it valid (Humberstone v. Humberstone, 1 P. Will., and many other cases; vide White’s Eq. Oa. 28). It is not denied that, in the construction of wills, technical rules were less regarded, and the true intention more generally followed ; yet there are cases in which, even in the construction of wills, that which was known and confessed to be the intention was wholly disregarded, either from the absence of those technical words which were deemed requisite to its expression, or from the technical meaning given to those that were in fact employed (Dean v. Gaskin, Cowp. 657 ; Frogmorton v. White, 3 Wils. 414; Doe v. Allen, 8 Term Rep. 697). The notes of the revisors render it certain that they designed, by the section under consideration, to redeem the law from the confusion and uncertainty, which the prevalence and frequent conflict of opposite rules of interpretation of necessity produced, and that they designed to effect this by giving to the actual intention a paramount authority; making it the duty of judges, in all courts and in all cases, to carry that intention, when ascertained and consistent with the rules of law, into full effect, without regard to the technical force or technical defects of the phraseology in which it was conveyed. Rules of construction may still with great propriety be invoked to aid in the discovery of a doubtful intention, but the declared will of the Legislature will be set aside and nullified, if they shall be permitted to defeat that which the court, judging from the whole instrument, is satisfied, corresponds with the mind of the parties. The section was adopted by the Legislature, in the very words in which it was submitted by the revisers; the reasons for its adoption accompanied its submission, and it is a reasonable and just presumption, that it was enacted in the sense in which it was proposed.
Let us now apply the principle of that section to the case before us: When it is said that the doctrine, that a prior bequest is extinguished by a subsequent gift, is artificial and arbitrary, the meaning undoubtedly is, that it attributes an intention to the testator, which, in all probability, he never *556 entertained; and the doctrine is said to he harsh and unjust in its application, because the intention thus falsely imputed, is permitted to defeat that which the will expresses, and the testator meant should take effect: But it is the intention which the will expresses, when there is no legal evidence of its actual change, which it is now the duty of judges to carry into effect, and in sacrificing it to an unreasonable presumption, they would violate the spirit of the statute, and frustrate, in a measure, the intentions of the Legislature.
HI. But I go still further; I deny that the English doctrine was in force in this state when the revised statutes were adopted: I deny that it has been in force, since the common law rules of descent were superseded by those of our own statute. When we examine, with any attention, the reasons on which the English doctrine is founded, we shall be satisfied that it was engrafted by successive Chancellors upon their own law of descent, the law of primogeniture; it springs from the same policy; it is designed to attain the same object; the object, the transmission of estates undiminished from the parent to the eldest son; the policy, by the continuance of estates in the same families, to maintain unbroken the influence and power of the aristocracy of the realm. The eldest son, the favored heir, is usually the residuary legatee, or the legacies to other children are charged upon the lands devised to him; hence, legacies are a deduction from the fortune he would otherwise receive, and it is to prevent a diminution of his estate, and, by the confession of a recent text-writer, “ to remove a burthen from the heir” (Ward on Legacies, p. 256), “that Courts of Equity,.in England, have leaned against double portions,” and to give effect to this leaning have invented and enforced the doctrine in question: It is not denied that it is the moral duty of the parent to make some provision for all his children, but this duty, in respect to daughters and younger sons (and it is to these that the doctrine in its application seems to be limited), is held to be fully discharged by a provision so moderate, as to be, in truth, insignificant and trifling, when compared with the bulk of the estate, which passes to the eldest son: A bequest to a younger son or daughter is presumed to represent all that portion of his estate which the *557 testator intended the child should have, and is presumed to be given, in discharge of what Lord Eldon terms (19 Ves. 411) his “ debt of naturea subsequent gift is attributed to the same motives, and, as it would be unreasonable to suppose that the same debt was meant to be twice satisfied, the gift is substituted for, and annuls the legacy (Ward on Legacies, p. 262-, 3). Can it now be necessary to ask, whether a doctrine like this, so plainly inconsistent with the spirit and policy of our own institutions, and so directly repugnant to the principles upon which our statute of descent is founded, ought, in this state, to be acknowledged as law ? The policy of our institutions is not to uphold a territorial aristocracy by preventing the distribution of its accumulated wealth, but by the frequent division of estates to prevent such an aristocracy from arising; the principle of our statute is, that all the children have equal claims upon the bounty as well as upon the affections of the parent; with the policy of our institutions, and the principle of the statute, the wishes and dispositions of parents, as a general rule, entirely correspond; and all combined, wholly exclude the presumption upon which alone the English doctrine is founded. The reasons of the doctrine with us have ceased to exist, and if there is any truth or obligatory force in the maxim, “ cesscmte ratione, cessat eiiam lex,” the doctrine has perished with them.
IY. Let it now, however, be admitted, that this doctrine of the presumed satisfaction of legacies by subsequent gifts from the testator, was in force when the revised statutes were enacted, and was not affected by the duty then imposed upon judges of carrying into effect, in all cases, the actual intention of the testator; the next inquiry then is, whether the doctrine has not been effectually abrogated by those new provisions in the statute of wills, by which wills of personal are placed, in all respects, upon the same footing, and are subjected to the same rules, as those of real estate ? That upon this question a difference of opinion should be found to exist, I frankly own, has excited my surprise as well as regret, since, until the argument of the case before us, it had not occurred to me that any other construction could be given to the provisions of the statute than that which I shall proceed to state.
*558 It is not necessary to recite those sections of the statute upon which the question depends. I deem it sufficient to state what in my judgment is their substance and effect. They declare,
First. That no will, whether of personal or real estate, shall be valid, unless it shall be signed, attested, arid published in the form and with the solemnities which are prescribed, and which, as known to us all, it is needless now to state. (2 R. S. 63, 4, § 40, 41.) '
Second. That no such will shall be altered or revoked, in whole or in part, except in the cases thereinafter mentioned, unless by an instrument in writing, signed, attested, and published in the same manner as the will itself. (2 R. S. 64, § 42.)
And lastly. They abolish, with no other exception than of the cases specially enumerated and defined, all implied revocations founded upon a presumption of law arising from subsequent events, or subsequent acts of the testator. (§§ 42, 3, 4, 5, 6, 7, 8, pp. 64, 65.)
It is this last proposition only that I understand to be denied, •and the grounds of the denial must therefore be examined. The argument rests upon the following series of propositions, which I extract from the elaborate opinion of the judge at special term:
First. That the provision in § 42 of the revised statutes, is no more in substance than the enactment in the statute of frauds (29 Car. 2), which was made a part of the statute of wills, when first framed in 1787, and is no more, in its present form, exclusive in its terms of all other modes of revocation, than was the original statute. (Opinion of Hr. Justice Sand-ford.)
Second. That it was settled law that the original statutory provision, in its application to wills of real estate, did not prevent virtual revocations of devises implied by presumption of law from subsequent transactions of the testator, or effected by such transactions. (Id.)
And lastly. As a necessary conclusion, that the extension of the original provision, to wills of personal property, cannot have the effect of cutting off or barrihg those implied revocations of legacies by presumption of law that courts of justice had formerly admitted. (Id.)
*559 There are other subsidiary propositions and illustrations that may hereafter be noticed, but the propositions which I have stated are the staple of the argument; they are in form a just syllogism, and unless the first assumed proposition can be shown to be erroneous, the soundness of the conclusion will not be denied.
, But the fatal objection to the entire train of reasoning is, that it starts from false premises. It assumes that § 42, in its present form, is the same in its substance and meaning, as the original provision in the statute of frauds ; it overlooks entirely the significant words, “ except in cases hereinafter mentioned,” and gives the same construction to the section as if those words had never been inserted ; it ignores the fact, that the necessary effect of their insertion is, that the section in its present form, and read in connexion with those that follow, is exclusive in its terms of all other modes of revocation than those which are expressly authorized ; the original provision in the. statute of frauds, as construed, was limited to express revocations; as altered in § 42,- it embraces all revocations, implied as well as express, since otherwise the exception of particular cases of implied revocations would be unmeaning and absurd; these cases are not exceptions at all, unless the general words of the section were meant to be understood, and may be understood, in a sense that would embrace them. As the statute now stands, I cannot but think that it excludes all proof of an express revocation, other than by an instrument in writing, executed with the same formalities as the original will, and all proof of an implied revocation, not referrible to some one of the excepted cases, the cases, which are alone excepted from the general rule, which § 42 declares and establishes. Not only is this the construction which the language of the statutory provisions necessarily suggests, but it is certainly that which those who framed, and (as we are bound to presume) those who adopted the provisions, intended should be given to them. The revisers, in their original note to the sections containing them, after showing, that the doctrine of implied revocations, in the extent to which it had been carried, was not very reasonable or consistent, and in many of its.applications worked great injustice, and after declaring that the new sections which they .proposed were meant to “ dispose of the whole doctrine,” avow their *560 conviction, that “ a valuable service will be rendered to the community,” if those cases in which alone implied revocations may be allowed shall be “ defined by legislative authority,” and add, “ that to leave it to courts of justice, however learned and respectable, to declare, in their discretion, when implied revocations shall be admitted, is to involve the whole subject in doubt and uncertainty.” To exclude this discretion, by specifying and defining the cases in which alone implied revocations may be allowed, was therefore the object of the revisers, and it would be unreasonable to doubt that such was also the intention of the Legislature in. enacting the provisions which the revisers recommended. (2 R. S. (2d ed.) 631, 2 and 3.)
It has been assumed that the section to which the observations of the revigers were appended, as reported by them, were confined to wills of real estate, and were extended by the Legislature to those of personal, and much stress has been laid upon the fact thus supposed to exist, as throwing light upon the true construction of the statutory provisions. I own, that I am unable to see that the fact has any bearing whatever upon the question of construction, since, were the supposition true, it would still be our duty in this, as in all other cases, to construe the sections, not as they were first reported, but as they were finally enacted. It is not necessary, however, to dispute a conclusion which rests upon a groundless supposition. Upon referring to the original reports of the revisers, and comparing them with the statute, it will be found that the- sections, which embrace the provisions we are considering, were all enacted by the Legislature, in the very words in which they were framed and submitted by the revisers, with no other change than the omission of a single clause in § 44. (2 R. S. pp. 64, 65, 66, §§ 42 to 53, both inclusive.) All the sections as reported applied to wills of personal as well as of real estate. It is needless, then, to inquire into the state of the law upon the subject of implied revocations, as it existed when the revised statutes were adopted, if it was the plain intention of the revisers and of the Legislature to change the whole existing law on that subject, by substituting the rules, which the statute prescribes, for those which had previously obtained.
It is said by one of the ablest and most learned of the Eng *561 lish judges that, so far as his researches had extended, he had found no instance in which the equitable doctrine of an Implied satisfaction had been applied to a devise of real estate (Alderson, B., in Davys v. Boucher, 3 Young & Collyer, 411), and my own researches have been just as unsuccessful. But admitting that such precedents may be found, and that the law was thus established, such an application of the doctrine, without a legislative or judicial repeal of the revised statutes, is no longer possible; it is no longer possible, if all implied revocations are abolished with no other exception than of those which the statute enumerates; and that this is the necessary legal effect of the statutory provisions, I find it impossible to doubt. As the words of the statute permit no distinction to be made between wills of real and personal estate, the doctrine is abolished, just as certainly and effectually, in its application to a bequest of money or stock, as to a devise of lands.
In the observations that have been made, it is assumed that the presumed satisfaction of a legacy by a subsequent gift, is an implied revocation of the provision in the will by which the legacy is given, and I confess my surprise, that this should have been regarded as at all a doubtful and debatable question. I am persuaded that no just definition of an implied revocation can be given, the terms of which will not be found to embrace the case. A will, or a provision in a will, is revoked, in the proper sense of the term, when, although capable of being carried into effect according to its terms, it is rendered inoperative and void by a subsequent change of the mind of the testator, manifested by such evidence as, in the particular ease, the law requires. The revocation is either express or implied; it is express, when the change of mind, the intention of the testator to revoke, is declared by a subsequent will or codicil; it is implied, when the existence of the same intention of the testator is presumed and inferred from a subsequent act or event. The revocation, however, whether express or implied, proceeds equally from a determination of the mind of the testator, the difference consisting only in the nature and form of the evidence by which the determination is proved. To apply: it has never been doubted, that marriage and the birth of a child operate as an implied revocation of a prior will; as such it is *562 excepted in the statute, and it is considered and treated as such by all who have written on the subject. Why so? Certainly not because the happening of these events renders the execution of the will impossible, and necessarily affects its provisions. Such is not the fact; it is so because (in the language of Mr. J. Bronson) “ the happening of these events affords strong presumptive evidence of a change of the intention of the testator in relation to the disposition of his property” (Haven v. Vandenburgh, 1 Denio, 29); and that this was the true ground of the doctrine is rendered certain by the fact that, as the law formerly stood, the presumption might be rebutted by proof of an opposite intention. I now ask, whether between this case, and that of the presumed satisfaction of a legacy by a subsequent gift, it is possible to state a reasonable distinction ? Is it not manifest that, in each case, the doctrine rests upon the same presumption, and, in each, gives to the presumption the same effect ? and if this effect is rightly deemed an implied revocation in the one case, must it not be equally so in the other ? We have seen that a general legacy is not, of necessity, extinguished by a subsequent gift or advance of an equal or larger sum, since, as the bequest and the gift are entirely consistent, both may be sustained; when the advance (I speak of. the English doctrine) operates as a satisfaction, it does so solely by the force of the intention which the law attributes to the testator in making it, his intention to annul the legacy and substitute the gift; and it is this presumed intention, not the mere fact of the advance, that prevails, when uncontradicted, to render inoperative and void the provision in the will. If this is not revocation, what is it ? To the question, why the legacy is prevented from taking effect, what answer can be given but this, that by intendment of law, the testator had revoked, i. e. recalled and rescinded it. The question of the satisfaction of a general legacy, as Mr. Roper has clearly shown (1 Roper, 366, 330), is in all cases a question of actual intention ;• and that an intent to satisfy involves and implies an intent to revoke, it seems to me, is not a matter of opinion, but of demonstration; if the gift was intended to be substituted for the legacy, it must have been intended that the legacy should be taken away, since otherwise there could be no substitution; it is only, there *563 fore, by an implied revocation, that the presumed satisfaction is or can be effected. These remarks, if well founded, supersede the necessity of any reference to authorities, but it would be strange indeed, if, upon such a question, the authorities were found to hold a different language. The supposition, that none of the elementary writers have classed the satisfaction of legacies with revocation, is a singular mistake; at least three of these writers, Ward, Lovelass, and Roberts, have treated of the satisfaction of general legacies, under the general head of implied revocations (Ward on Legacies, pp. 261, 2 Law Lib. N. S. pp. 134, 135 ; Lovelass on Wills, 869, 9 Law Lib. N. S. p. 196 ; 1 Roberts on Wills); and Mr. Roberts justly says, that when a man, “ having granted a benefit by a revocable instrument, makes an advancement of some other bounty or provision, and the circumstances warrant the presumption that the second gift was intended to take the place of the first, this, is not properly a satisfaction—its true operation is to revoke the legacy” (p. 391).. It is true that Roper entitles his chapter on this subject, “ Of General Legacies, and their ademption ;” but “ ademption” applied to a general legacy means “ revocation,” and nothing else or more; thus applied, it means the taking away the bequest itself, not, as when applied to a specific legacy, the destruction or removal of its subject. In many cases the language of the judges is explicit, that satisfaction operates as a revocation, and I refer especially to the language of Lord Macclesfield in Hartop v. Whitmore (1 P. Will. 68), and of Lord Eldon in Ex parte Dubost (18 Vesey, 155). In this last case, that eminent and cautious judge, in closing his opinion, said, that “ he was not much impressed with the objection that the testator had not in fact altered his will. The advance operated as a revocation, and therefore an actual revocation was unnecessary;” in other words, the implied revocation superseded the necessity of an express. I refer also to the observations of Alderson, B., in the case before cited of Davys v. Boucher, where, after stating that the doctrine of presumptive satisfaction had never been extended to devises of real estate, he adds, that “ so to extend it would be to repeal that provision in the statute of frauds, which applies to devises of real estate,” thus showing that not only satisfaction, in his *564 opinion, implied revocation, but that, had the provision in the statute of frauds embraced wills of personal estate, the doctrine,as inconsistent with the statute, would never have been introduced. If or will the cases which have been cited in support of an opposite view, when examined, he found at all to conflict with these authorities. In Roswell v. Bennett (3 Atk. 77), the legacy was in its nature specific, and it is of ademption that Lord Hardwi eke speaks, not of satisfaction. In Hall v. Hill (1 Drury & Warren, 98), the question which Sir E. Sugden so elaborately discusses, is only that of the admissibility in evidence of the declarations of a testator, and his conclusion is, that they can only be admitted to rebut or justify, and not to raise, a presumption of satisfaction ; he does not assert or intitimate that a presumed satisfaction is not a-revocation. Kirk v. Edowes (3 Hare, 509) was a case not of presumptive satisfaction, but of actual payment; the advance was made by the testator in terms as a payment, and as such was assented to and accepted by the legatee; such .cases, it will hereafter he seen, stand upon a very different ground, and it is not necessary to deny that actual payment may operate to extinguish a legacy, without being, in the proper sense of the term, a revocation.
The learned judge who decided this '.case at Special Term, says, that “ it was contended with much show, of sound reasoning, that the ademption of legacies, or their discharge, or satisfaction by subsequent payment made by the testator, although often termed an implied revocation of so much of his will, is really no revocation; that it does not affect the will at all, for its. legal effect is unimpaired.” I am not surprised that the learned judge, not misled by this show of reasoning, elected to place his own decision on other grounds; he doubtless saw, that although there was “ much show,” there was little reality or substance. Strike out the word “ payment” in the passage that has been cited, and substitute “ advance” or “ gift,” and the show of reasoning at once disappears. What is meant by saying, that “ the will is not affected at all,” when a material provision is virtually expunged, and the intention which it expresses entirely defeated, by a subsequent intention, which the law presumes to hate existed in the mind of the testator, I do .not ¡profess to understand; since the assertion might be made *565 with equal truth, were the intention which is presumed fully and legally expressed in a subsequent will or codicil; in both cases, it is true, the will on its face is unaltered, and in that sense not affected, but it also happens that in both a material provision is reduced to a dead letter, by evidence (which the law holds to be sufficient) that the testator intended it should be and remain so. It may be that this is not an alteration, and pro temió a revocation, of the will, but if so, the words have lost their meaning, and there is no conceivable case to which, as they are used in the statute, they can be applied. The assertion, that by the satisfaction of a legacy, and whether actual or presumed satisfaction is meant is here immaterial, “the legal effect of the will is unimpaired,” is, if possible, still more extraordinary; the “legal effect” of a bequest is to give the legatee a right to demand the payment of the legacy, and the assertion is, that this legal effect is unimpaired, although the right to demand such payment is wholly gone! If by “ legal effect” is meant “ legal construction,” as seems to be suggested in the points op the part of the defendants, the assertion is quite true, but at the same time wholly immaterial; in all cases, where a will is revoked, the legal construction of its provisions is unaltered, it is only their legal effect that is destroyed. It must be admitted, that the revocation of a bequest by an intention which the law attributes to the testator,, in making a subsequent gift to the legatee, is effected by a presumption of law; and if it be true, as it is asserted, that there are still many cases in which a revocation, by a presumption of law, arising from subsequent acts of the testator, must be-upheld by judges, notwithstanding the positive terms of the revised statutes, which seem to exclude them, the presumptive satisfaction of a legacy may possibly be referred to> the same class, a class which “ recent legislation has not reached.” It is plain, however, that this is only a different form of stating the question, whether the revised statutes have' abolished all implied revocátions, since it is upon a presumption of law that every implied revocation will be found to rest; and I admit that the construction which I have given to the statute must be rejected, if there is a single case, other than those specially excepted, in which the revocation of a will, or of any part of a will, by *566 a presumption of law, arising from subsequent acts of the testator, otherwise than by a plain violation of. the expressed intention of the Legislature, may now be decreed. Instances, however, are given in which provisions in a will, it is alleged, are prevented from taking effect by a presumption of law, and these instances I shall briefly examine; if they are indeed cases in which a revocation is thus effected, the argument which I have founded on the' construction of the statute must be abandoned.
The first case is, where the testator has conveyed lands to a stranger which he has devised in his will; the second, where he has bequeathed a horse by a specific name and description, and subsequently gives the horse to the legatee. It is not to be denied, that in each of these cases, the provision in the will, i. e. the devise or bequest, is prevented from taking effect by a subsequent act of the testator; but in neither, is it defeated by a presumption of law, arising from his act, and the supposition that it is so, I am constrained to say, is a singular error; it confounds cases of “ ademption,” in the strict and proper sense, with those of implied “ satisfaction,” and “ specific” with “general” legacies. In the instances given, the devise and the legacy is, each of them, specific, and is prevented from taking effect, not by an implied revocation, but by a positive ademption; the intention of the testator, as expressed in his will, is not defeated because the law presumes that it was changed, but because he had performed an act which rendered it impossible to carry it into effect. It must be confessed, that these are cases which the legislation of the revised statutes has' not reached; but it is equally certain, that they are cases which no legislation can reach; it is beyond the power of the Legislature, I apprehend, to give effect to a devise or bequest, when, at the death of the testator, there is no longer a subject upon which it can operate. Had all the enormous wealth of Mr. Astor, by successive astonishing reverses of fortune, been •swept away before his death, his intentions, as expressed in his. will, would have been wholly defeated, but I do not imagine it would have occurred to any one to say, that they were defeated by a presumption of law; there would have been no revocation of his will, express or implied, but its provisions would *567 have failed of execution, simply from the fact, that he had ceased to be the owner of the property upon which they were designed to operate. The ademption of specific devises and legacies rests precisely upon this ground, and no other; and it is for this reason, and no other, that they are untouched by recent legislation. The defeat of the provisions of a will by a presumption of law, can only take place when, but for the presumption, they might and would be carried into effect. It is true, that in many- cases the ademption of a specific legacy may be an intentional act of the testator, but it is not true, that in any, its effect depends upon the intention ; it depends in all upon the act alone—ademption is the necessary consequence, although the intention to adeem may not have existed. When a testator conveys land to a stranger, which he had previously devised to a son, he may have forgotten wholly this provision in his will; still, if the conveyance stands, the devise of necessity fails. It follows, if there is any truth in these remarks, that nothing has been said to weaken the force of the argument founded on the words of the statute, namely, that except in the cases which it enumerates, and by the means which it prescribes, they forbid all revocations of a will, or of any part of a will, and, consequently, all revocations by a presumption of law. To exempt the satisfaction of legacies by the presumption of an intent, from this broad prohibition, is not to construe, but, so far, to repeal the statute; it is creating an arbitrary exception, alike inconsistent with its words, and repugnant to its policy.
It might be inferred from the preceding observations, that in England the doctrine of presumptive revocations remains to this day unaltered; the fact, however, is far otherwise. The conviction of jurists and statesmen, that the plain intentions of a testator, as expressed in his will, ought never to be set aside by a mere presumption of their change, nor indeed by any extrinsic proof less authoritative and solemn than that by which the will itself must be established, is manifested as fully in the recent legislation of England as in our own. The new statute of wills (1 Vic. c. 26), the provisions of which apply equally to wills of personal and real estate, after prescribing the solemnities with which every will must be executed, and providing *568 that the subsequent marriage of a testator or testatrix shall operate in all cases as an absolute revocation, declares, “ That no will shall be revoked by any presumption of an intention, on the ground of an alteration in circumstances” (§19); and in the next section, “ That no will or codicil, or any part thereof, shall be revoked, otherwise than as aforesaid” (i. e. otherwise than by marriage, the only exception previously mentioned), “ or by some other will or codicil executed in manner herein-before required, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is hereinbefore required to be executed, or by the burning, tearing, or otherwise destroying the same by the testator, or by some person in his presence and by his dictation, with the intention to revoke the same.” (§ 20.) It is evident, therefore, from a comparison of their provisions, that the Act of Parliament and the revised statutes are founded upon, and seek to carry into effect, the same policy; the total exclusion of all parole evidence relative to the intentions of a testator in making, altering, or revoking his will, with the single exception of his intentions in its cancellation or destruction, and the exclusion, just as absolute, of all such evidence in writing, other than that which they carefully define and allow to be received. To depart in any casé from this policy is not merely to contradict the words, but to sacrifice the principle of the statute, and to open a wide door for the introduction of those mischiefs, which the apparent but salutary rigor of its provisions was designed to prevent. I close this branch of the discussion by stating the following as the propositions which, it seems to me, have been established.
First. That the legacies in question, $100,000 of city debt, and $100,000 deposited with the Hew York Trust Company, are not specific, but general or pecuniary, legacies.
Second. That as general legacies, they must now .be satisfied from the personal estate of the testator, unless it is shown that they have been satisfied in fact, or by intendment of law, or chave been revoked by an instrument in writing, duly executed and attested.
Third. That the trust created by the testator in his lifetime, for the benefit of the plaintiff, of stocks, corresponding in de *569 scription, amount, and value with those bequeathed to her, did not necessarily operate as a satisfaction of the legacies, since the provisions so made for her being entirely consistent, the trust may well operate, not as a substitution for the legacies, but as a cumulative bounty.
Fourth. That the satisfaction of a general legacy by a subsequent gift or advancement from the testator is in all cases a question of intention, and consequently that the intention of the testator in this case to substitute the trust for the legacies, and thereby revoke the latter, must either be presumed, or be established by legal proof.
Fifth. That' the existence of this intention cannot be presumed unless the doctrine, which formerly prevailed in the courts of equity in England, that a legacy from a parent to a legitimate child is presumed to be satisfied, in whole or in part, by a subsequent gift or advancement from the parent, must be regarded as the law that we are bound to follow.
Sixth. The English doctrine is not that which a court of equity in this State is bound or is at liberty to follow, because,
1st. It is inequitable and arbitrary, and is founded upon artificial reasoning far more likely to defeat than to carry into effect the real intentions of a testator.
2nd. The doctrine, both in'the principle on which it is founded and in the consequences to which it leads, is directly repugnant to the spirit and policy of our republican institutions; it is a graft upon the law of primogeniture, and was invented to sustain the influence and power of an existing aristocracy.
Seventh. If the English doctrine was. ever in force in this State, it has been wholly abolished by those provisions of the revised statutes, by which all implied revocations of a will, or of any part of a will, except in the cases enumerated, are abrogated and forbidden.
Lastly. There is an implied revocation in all cases where a will, or a provision in a will, is rendered inoperative and void by a subsequent intention which the law attributes to a testator, and presumes to have existed. Hence the satisfaction of a legacy founded solely on such a presumption is necessarily an implied revocation.
Y. Considering it, then, as now proved, that the trust creat *570 ed by the testator for the benefit of the plaintiff, could not operate per se as a satisfaction of the legacies in question, and that his intention that it should operate to extinguish the legacies cannot be presumed; the next question is, whether there is any positive evidence of this intention of the testator upon which, as a court of justice, we are bound, or can be warranted to act ? I assume, in this inquiry, that, had there been no special provision in the will or codicils relative to the effect of future advances to be made by the testator, and had no such advances been charged in his books, the plaintiff would be certainly entitled to the relief which she claims, and the question therefore is, whether the special clause in the first codicil, relative to future advances, and the charges made in the books in connexion with the fact of an actual transfer of stocks for the benefit of the plaintiff, equal in amount and value to those bequeathed to her, must be regarded by us as legal and conclusive proof of an intention to which the same effect must be given, as if it had been expressed in a codicil duly executed and attested? It was said, upon the last argument by the learned and able counsel for the defendants, that in his judgment the question of an implied ademption or satisfaction was not necessary to be considered at all, and that it was upon the proof that had been given of an “ express and full satisfaction” that he solely relied; but it is manifest, that if the legacies, as general, were not satisfied merely by the transfer of stocks of equivalent value, and if the intention thus to satisfy them cannot be implied, the defence rests entirely Upon the evidence that has been stated, and must therefore fail entirely, if that evidence, from its nature and quality, cannot be received. It is, therefore, upon the admissibility and effect of this evidence that the cause wholly turns. In considering this question, I shall confine myself, in the first instance, to the charges in the books of the testator, and the inquiry will be, whether these charges could be admitted in evidence had not the intentions of the testator, in relation to their purpose and effect, been declared in his will ? Upon this supposition, would these charges, although not in the handwriting of the testator, or signed by him, or witnessed at all, but, and because made by his direction, be competent and effectual proof that he intended by the *571 transfer of the stocks charged to satisfy and extinguish the legacies ? The necessary answer, it seems to me, is free from difficulty.: it is, that unless provisions in a will, that would otherwise take effect, may he revoked by parole, the evidence cannot be received. It cannot be pretended in this case that there has been an actual payment, in the proper sense of the term, of the legacies in question; it is apparent from all the cases, and has not been denied, that to constitute a payment of a legacy by anticipation, the knowledge and assent of the legatee are necessary to be proved. It is not pretended that the plaintiff, when she accepted the trust, meant to renounce any of the benefits to which she might become entitled under her father’s will, for there is no evidence that, at this time, she "had any knowledge of the provisions or even of the existence of his will, still less of the charges against her in his books of account. For aught that appears she considered the transfer of stocks as a present bounty, and nothing more. Can her rights, therefore, under the will be affected, and its provisions in her favor be rendered inoperative and void by proof of an intention, which, as to her, was wholly secret ? Had this intention, although concealed from her, been declared in a codicil duly executed and attested, such would be its effect, but can we give the same effect as evidence of the intentions of the testator, to a charge in his boobs of account, that would be given to a codicil executed, published, and attested, with all the solemnities which the statute requires ? I apprehend not, unless we repeal, and have power to repeal the statute.
But without referring, for the present, to the provisions of the statute, it is a mistake to suppose that it has ever been the law, that a gift or advance which the law would otherwise intend to be an additional bounty, may be converted into the payment or satisfaction of a prior legacy, merely by parole evidence, that such was the intention of the testator. Where the intention accompanies and is a part of the act, as when it is declared to the legatee when the gift is made, and the legatee, with this knowledge, accepts the gift, he is doubtless precluded from claiming the legacy; but unless there has been a formal revocation, it is only by such evidence that his claim to receive the legacy, according to the direction in the will, can *572 now, or could ever, be barred. It may be affirmed with confidence that, as the law formerly stood, and before wills of personal were put upon the same footing as those of real estate, oral or parole evidence of the intention of a testator in making a subsequent advance or gift to a beneficiary under his will, could only be received to confirm or rebut a presumption, and in those cases in which there was no presumption, that the gift was meant to satisfy and cancel a prior legacy, was wholly inadmissible ; that is, was inadmissible in all cases except when the legacy was to a legitimate child, or to a person to whom the testator stood in the place of a parent; and the reasons for rejecting the evidence in other cases are doubtless those which are given by Mr. Roper, namely, that to receive such proof for any other purpose than that of repelling or confirming a presumption, would be contrary to the statute of frauds, since its effect would be to revoke by parole the provisions of a written will. (1 Roper on Legacies (by White), p. 273, 274, 276.)* Mr. Justice Sandford, in his opinion, distinctly admits that “ the English authorities are full and clear; that the intention of a testator to satisfy a legacy by a subsequent gift to the legatee cannot be proved by parole evidence, unless where the law raises the presumption of satisfaction from the fact of the gift and that such is, and ought to be, the settled law, Sir Edward Sugden, in his elaborate opinion in Hall v. Hill, may be said to have demonstrated (1 Drury & Warren, 95); it therefore follows, that if it has been shown that the English doctrine of presumed satisfaction is no longer in force, no parole evidence of an intended satisfaction can be received, and that the entries in the books of account deserve any higher character than that of parole evidence will scarcely be asserted. The proof that has been given, when examined, will be found to relate solely to the oral declaration of his intentions made by the testator to a single witness; the writing is not that of the testator, but of the witness.
*573 The conclusion is, that the entries in the books of the testator could not have been admitted in evidence, even had there been no change of the law in relation to wills of personal property ; but when we remember that such wills must now be executed and revoked in the same manner, and with the same formalities, as those of real estate, the exclusion of the evidence as directly repugnant to the words and plain meaning of the statute is seen at once to be a necessary consequence. For what purpose are the entries to be given in evidence ? What is the fact that they are adduced to prove? Not that of a transfer, as .a donation, of the stocks charged, in trust for the plaintiff, for this is proved, and could only be proved, by the production of the certificates ; the entries are relied on to prove, not the fact of a donation, but the intention of- the testator in making it*; that is, his intention to revoke the legacies and substitute the gift; and the necessary effect of the evidence, if admitted, will be to alter the will by expunging the legacies. The words, however, of the statute, as far as they bear upon the question now under consideration, are that “ no will in writing, or any part thereof, shall be revoked or altered otherwise than by some other will in. writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed.” (2 R. S. 64, § 42.) There is no ambiguity in these words; they leave no room for criticism or comment ; and they make it our plain duty to say that the intentions of the testator, as expressed in the will, must be carried into effect, and payment of the legacies claimed by the plaintiff be decreed to her, unless it can be shown that his intention to alter his will by the revocation of these legacies has been sufficiently declared by some other writing executed by him with the same formalities as the will itself.
It is, however, insisted on the part of the defendants, that the necessary proof has been given, and that the intention of the testator, that, in the events that have happened, the legacies in question should not take effect, in other words, should be revoked, is clearly and fully declared in the first codicil to his will, the proper execution of which has not been denied, or, if denied, has been established. That this codicil is duly exe *574 cuted. has been already decided, and hence, whether it contains such a declaration of the intentions of the testator as will render the entries in his books admissible in evidence, and give to them, in connexion with other facts that have been proved, the effect of a revocation of the legacies claimed, are the questions next to be considered. If it shall appear in the result that the objections that have been stated to the admission of the entries, as evidence of the intentions of the testator, are not removed, and that, consequently, we have no right to say that the legacies in question have been satisfied and revoked, the plaintiff must still be entitled to the judgment she demands.
YI. The clause in the first codicil which is relied on as esta blishing, in connexion with the facts proved, the defence set up in the answer, is in these words : “ And inasmuch as I may make advancements or beneficial provisions for persons or purposes, provided for in my will or codicil, it is my direction that such advancements, if charged in my books of account, shall be deemed so much on account of the provision in my will or codicils in favor of such person or purposes.” The argument for the defendant, founded on this clause, may be stated' in few words: The testator (it is .said) has made an advancement of a beneficial provision for the plaintiff, corresponding in its amount with the legacies in question, and for the express purpose, as appears from the charges in his books of account, of satisfying those legacies; his intention, therefore, as expressed in the clause, that the advancement so made should be so much on account of the provision made for the plaintiff in his will and codicil, and should, therefore, operate to extinguish the legacies to which it was meant to apply, and with which it corresponds in value, must be carried into effect. This reasoning, it must be owned, is specious; so much so, that the first impression of all may be (such I confess was my own) that it is satisfactory and conclusive; whether a closer examination will not prove it to be, in reality, fallacious and unsound remains to be seen.
It will be observed that the clause is not a positive declaration, that every advancement made by the testator should be so much on account of any provision in his will or codicils for the person advanced, and consequently should have the effect *575 of revoking or reducing the provision. Had the clause been thus expressed, I think no question could have been raised as to its validity, at least I should not myself have entertained a single doubt; upon this supposition the intention of the testator in making the advancement would be expressed in the will itself, and to give effect to his intention, the fact alone would remain to be proved ; and there could be no objection to proving this by the same kind of evidence as the payment of money, or the delivery of property in any other case ; but as the clause is framed, it is not an intention which it expresses, that we are required to carry into effect, in holding, that by the advancement that has been made, the legacies in question have been satisfied and revoked, but an intention not then existing, subsequently arising, and differently expressed; an intention which the will has not declared, but left to be declared by the testator, if in future it should arise. The language of the clause as framed plainly shows, that the testator did not mean that every advancement made by him, should have the effect of altering and reducing the provision in his will in favor of the person advanced; he meant that this effect should only be given to such advancements as he might deem it expedient to charge in his “ books of accounthe thus reserved to himself the power of making the effect of every advancement depend solely upon his own intention at the time of making it, and of this intention he, in effect, declares that the charges in his books shall be the proper and conclusive evidence. That the entries in his books are .evidence of his intention, and of that alone, has already been said, and is rendered still more manifest by the terms of the clause we are considering; had no charges been made in the books of account, and the advancement had alone been proved, the payment of the legacies demanded could not, and, probably, would not have been resisted; hence, if the legacies' must be considered as revoked, it is only by the entries in the books, and the intention which they express, that the revocation has been effected. The true meaning and interpretation of the clause which is so confidently relied on, are precisely the same as if the testator had declared, in the first instance, that every advancement made by him should be treated as made on account of the provisions in his will in favor of the person ad *576 vanced, and had- then added, “ provided that by charging the advancement in my books of account I shall declare that such is my intention.” The question, therefore, plainly and distinctly arises, a question of the utmost importance, and from which we cannot escape: Can a testator by.a clause in his will reserve to himself the power of altering and revoking its provisions by a future declaration of his intention, to be made by him in any other form, or by any other instrument, than such as the statute prescribes ? If, by virtue of such a reservation, he may alter or annul a provision of his will by an entry in his boobs, why not by an oral declaration? and if by such means he may revoke a single legacy, why not the entire will ? The words of the statute are no more disregarded, -the plain intention of the Legislature no more violated in the one case than in the other. If a testator, by his own act, a clause in his will, may release himself from the observance of a single requisition of the statute, I see no reason to doubt that he may dispense with them all. 3$Tor is this all. The words of the statute are just as imperative in declaring that no will, or part of a will, shall be altered or revoked, otherwise than by an instrument in writing, executed with the same formalities as the will itself, as in prescribing the formalities that must be observed in the execution of the will, and the observance of which is necessary to render its dispositions valid; hence, if a testator, by a clause in a will duly executed, may acquire to himself a partial or absolute power of revocation, without any regard to the provisions of thé' statute, why may he not by the same means ácquire to himself an unlimited power of disposition; the unlimited power of making a new and entire disposition of his property by any means declaratory of his intentions that he may choose to adopt ? This, it will be said, is an extravagant proposition, for which. no one contends. Be it so; but if the proposition, however extravagant it seems, is a necessary consequence of that which is asserted, and the exigency of the defence requires to be maintained, there remains but this alternative, we must embrace the conclusion or reject the premises. I can readily believe that if the testator had said in his will, that none of its provisions should take effect, if by an entry in his books of account, he should declare his intention to revoke *577 them, or by a like entry should make a new disposition of Ms property, the clause in his will, as proof of a design to evade the provisions of the statute, would be pronounced by all to be illegal and void; yet, can it be said that in principle there is any distinction between the cases supposed and that which is before us ? If the testator, by charges in Ms books, has rendered void, that is, revoked the legacies in question, and if the clause in the codicil has rendered valid an act that would otherwise be void, can any reason be assigned why a testator, by similar means, may not acquire the power of effecting, and effect, an entire revocation ? and by parity of reasoning a new disposition ? The violation of the statute is not more plain in the last cases than in the first, and if there is no such violation in the first there is none whatever; if it may be said with truth in one case, it may be in all, that the testator, in freeing himself from the restrictions of the statute, has only exercised a power which the law gave him. It has been shown in a former part of this opinion, that had there been no direction in the will of the testator, relative to future advancements, the charges in his books could not be read as evidence of his intention to satisfy the legacies, since by admitting them in evidence, we should contradict the words of the statute, and sanction a revocation by parole, or which is in effect the same, by a writing not executed with the formalities which the statute requires. Has the clause in the codicil, which we are now considering, altered the ease? Has it weakened at all the force of the argument, or in any respect varied its application ? Has the testator made that evidence which the law would otherwise reject? and has he given to that evidence an effect, that of a parole revocation, which the law would otherwise deny to it ? If so, the general proposition follows, that a testator, by a clause in a duly executed will, may acquire to himself the power of doing any and every act which the statute forbids, and free himself from all the restrictions which if imposes. As I find it impossible to adopt the conclusion, I must deny and reject the premises. I must, therefore, hold that the clause which makes the effect of an advancement, in altering a provision in the will, depend upon the future intention of the testator to be manifested by a charge in his books of account, is *578 upon its face illegal and void, since if valid, a revocation would be effected by a simple entry in a merchant’s books of account, which the statute says can only be effected by a writing executed with the same formalities as an original will. It is true that the intention of the testator, that such should be the effect of a charge in his hooks, is" declared in his will; but it is a declaration which he had no right to make, since it would cpnfer a power which the statute- forbids to be exercised.
Although the opinion which 1 have now expressed, it now appears to me, is not only a plain, but necessary, conclusion from the principles before- established, I own-, that it is not without difficulty that the conclusion has been reached. In my first reflections, I found it difficult to consider the question of revocation disconnected from the fact of the advancement;; it escaped, in a measure, my attention, that although the advancement supplied motives feir a revocation, it did1 not by itself work a revocation; but that the latter, as a distinct fact, was just as necessary .to-be proved" by the-evidence, which the statute requires, as it. would have been, had no advancement preceded it. In all eases, a revocation- proceeds from- motives- which the testator- deems- to be- sufficient, but" it seems evident that in none can the necessity of making the revocation in the mode and form which the statute prescribes, be varied by the nature of the motives from which it proceeds ;; there-is, however, an apparent equity in considering am advancement or subsequent gift as a satisfaction of a prior legacy, wheat such is shown to have been the intention, which is well calculated to mislead ns; and when we believe that such was the object of the testator, we are apt to think that it is of little consequence by what kind of evidence, if satisfactory ism itself, the declaration of his intention is proved ; we are disposed to regard the intention, however proved,as apart of the act, and upon that ground to except its declaration from the requisitions of the statute. This, I am now convinced,, is- a grave- error. When an advancement is not an actual payment, and. does-not necessarily operate as a satisfaction by force of a direction in the will, where, unless proof of an opposite intention is given, the law .will intend it to be a bounty (as is always the case when satisfaction is not presumed), there exist precisely the same *579 reasons for holding that the proof of an intention which is to alter the character of the advancement as a bounty, and thereby annul the legacy, shall be that which the statute prescribes, that exist in every case to which the provisions of the statute are admitted to apply. The undeniable and imperative reasons of public policy, by which the stringent provisions of the statute have been dictated, and are justified, should be constantly borne in mind; they have a deep foundation in human experience, and in the principles of our common nature; hence, it is confessed, in the legislation of every civilized "nation, ancient and modern, that in order to guard against mistakes, surprise, undue influence, and fraud, it is necessary that the free and intelligent execution of a last will shall be attested and secured by rules and forms more stringent and more solemn than are deemed to be requisite in any other transaction; and I cannot but think that it is the duty of courts of justice- to watch with a vigilant jealousy against any departure -from such regulations, by which a possible breach may be made-in a rampart that, it may truly be said,, the experience and, wisdom of ages have erected.
We are told, however—and this,, it appears to-me,.is-the-only answer that has been given,, or attempted to be given,, to the considerations that have been urged—we are told,, that we-have before us only the ordinary case of provisions in a will being rendered liable to be defeated by a condition subsequent ;■ w.e are told, that there is in reality no distinction- between the present case and those- in which it has been held to be a valid condition, that a legacy given by a will shall be diminished in. amount should the legatee-receive an increase of fortune from a stranger, since it must be- quite immaterial whether this increase of fortune, which is to reduce the legacy, proceed from a stranger, or from the testator himself. This last position I admit to be perfectly true, if, in order to give effect to the intentions of the testator as expressed in his will, the fact of a subsequent increase of fortune is the only fact necessary to be proved; but the assertion that the legacies to the plaintiff are to be treated as simply conditional in. the same sense, as in the case chosen for illustration, overlooks a very plain and very material distinction, and, unless I greatly err, to state the dis *580 tinction is to prove the error. A testator has an undoubted right to make all or any of the provisions in his will depend upon a condition precedent or subsequent; he may declare that a legacy given by his will shall not take effect, until a certain event shall happen or act he performed, or, if the event happen, or act be performed, shall be wholly defeated; and when the happening of the event, or the performance of the act, is proved, the court will doubtless declare that the legacy shall take -effect, or be defeated, according to the nature of the condition upon which it depends, for in so doing it will only execute an intention which the will expresses; but the case is widely different, when the vesting or defeat of the legacy is made to depend, not merely upon the happening of the event, or the performance of the act, but upon the intention at that time of the testator; an intention then to be formed, and then to be declared. In this case it is not an intention expressed in the will that the court is required to execute, when payment of the legacy is resisted, but the intention afterwards declared, since it is by this alone that the legacy is to be made effectual or rendered void. An intention, however, which is to produce this effect, is in its nature testamentary, and can therefore only be effectually declared by an instrument testamentary in its character and form.; that is, by a writing of the testator executed with .the same formalities as the will itself. Let us apply this to the case .alleged to be parallel: A parent bequeathes a legacy to his daughter., declaring in the will that any and every sum of money that she may receive during his life as a bounty from any relative, shall be deemed so much on account of the provision for her in his will, provided that by charging the sums so received in his book of account, he shall declare his intention that they shall be applied to reduce the legacy. If, in this case, a mere entry in the books of the testator of a sum received as a bounty by his daughter, together with proof of its actual reception, could be held to beyro tanto a valid revocation of the legacy, the decision that the defendants now claim may be made in the case before us, and not otherwise, for the cases, as now stated, are not distinguishable. Numerous cases are to be found in the books, in which conditions adjudged to be valid, are annexed to a devise or bequest, but not *581 one, I affirm with confidence, in which the condition involves, as a necessary element, a declaration of a future intention to be manifested by the testator, in any other form, than that which the statute prescribes.
Several decisions were referred to upon the hearing by the learned and laborious counsel for the plaintiff, as applicable to the question I am now considering; and among these the leading case of Habergham v. Vincent (2 Ves. Sen. 206, S. C. Brown C. C. 353 ; Bowel on Devises by Jarman, p. 49, note). I think that it was very properly cited, and has a direct and important bearing. The testator in that case devised certain freehold and copyhold estates to trustees, upon trust, to convey the same after payment of certain legacies and debts to a grand-daughter for her life, remainder to her issue in tail, and remainder to such persons, and for such estates as he (the testator) should, by any deed or instrument in wilting, to be executed by him and attested by two of more credible witnesses, appoint. The day after the execution of the will, he executed an instrument in writing attested only by two witnesses, by which he directed his trustees to convey the real estates, after the- death of his grand-daughter and failure of her issue, to his- son in tail,, with remainder to the right heirs of the survivor of the trustees. The controversy related to the validity and operation of this deed, and it was a principal question, whether- a testator could by his own will reserve to himself the power- of disposing of his estates by a testamentary instrument not attested according to the statute. The court decided, that he- could not, and that the deed, so far as it embraced freehold estates,, was wholly void; it could not operate as a devise, since it was- not attested-by three witnesses, as, in relation to wills of real estate, the statute of frauds required; and it could not be upheld as a deed, since, as its purposes were not to take effect until after the death of the testator, it was in its nature- a testamentary instrument (vide also Down v. Taylor, 2 Ch. Ca. 681; Rose v. Cunynghame, 12 Ves. 36; Hooper v. Goodman, 10 Ves. 165). Unless a plain and valid distinction can be- stated between a. reserved power of disposition by an unattested instrument or.paper, and a similar power of revocation, it seems to me, that the judgment in Habergham v. Vincent bears upon, the present- *582 case with commanding authority. This judgment is in England unquestioned and undoubted law, and upon what ground it can be questioned here I do not understand. The distinction that I have mentioned, the words of our statute do not allow to be made, nor do I believe that any plausible reason for such a distinction can be given. Even if the distinction existed* it may well be doubted, it will hereafter be shown, whether it is applicable to the present' case.
Some of the remarks made by one of the learned judges in Habergham v. Vincent are exceedingly apposite. He said that the maxim* “ quisqms potest renuncicvri jv/ri pro se introducto.could not apply to the case, since the statute requiring three witnesses was not made for the benefit of the testator, but for public purposes, and a testator could not, therefore, say that he would make a will without the requisites prescribed. Our statute in relation to the revocation of wills is just as positive in its terms, and is as certainly founded upon public reasons ; it follows that a testator cannot say that in revoking his will, he will dispense with its provisions. The same learned judge (Wilson, J.) made other very applicable remarks, which in a condensed form I deem it expedient to quote. “ There is a' striking difference,” he said, “ between those cases in which the will refers to an unattested paper then existing, and those in which the reference is to a future intention to be expressed in a future unattested paper; in the first case, the paper referred to becomes a part of the will, with the same effect as if- it were recited in terms; the intention which it expresses, the will therefore adopts and sanctions, so that in giving effect to the paper, the law executes a precise intention mentioned in the will.” But “ when a man declares he will in some future paper do something, he says, he will make a will as far as his intention is then known to himself, but will take time to consider what he will do in future;” hence an intention resulting from such future consideration, if conveyed by-an unattested paper, is inoperative and void. To apply these ' remarks to the present case, had there been a positive declaration in the will, that every future advancement should operate pro .tanto as a revocation of the provisions in the will in favor of the plaintiff, in giving this effect to the proof of an advance *583 ment we would." only execute the precise intention mentioned in his will,” but as the testator “ took time to consider” what he would do in future, and whether in consequence of an advancement he would, or would not, revoke in whole or in part any provision in his will, the intention that we are now required to execute is not that “mentioned in the will,” but that alone which the unattested entries in his books declare; not an intention then existing, but the result of his future consideration. Its declaration, therefore, is inoperative and void. A case not cited on the argument has occurred in England since the passage of the new statute of wills, which, as also bearing a close analogy to the present, is proper to be stated. It is the case of Johnson v. Ball, reported, 21 Law J. Rep. (N. S.) Chanc. 210, and also in 9 Eng. Law & Eq. Rep. 159. The testator was possessed of a policy of insurance upon his own life, which he bequeathed to certain persons as trustees, in these words: “ To hold the same upon the uses appointed by a letter signed by them and myself.” When he executed the will no such letter was in existence, but he afterwards dictated and signed a letter, by which he directed the trustees named in the will to pay to the plaintiff during her life, the income of the sum total secured to be paid by the policy, and after her death to distribute the capital among her children; the question was, whether by this letter, the bequest was rendered valid. The Vice-Chancellor (Parker) held, that the letter, as a declaration of trust, was plainly void, and that the bequest, from the want of a proper declaration of its uses, had entirely failed; consequently, that the executors must hold the property as a part of the residue of the estate. In delivering his opinion, he said, “ It has not been suggested that any such letter as the will referred to, existed when the will was made. The document which the plaintiff relied on was signed by the testator some time after. Even supposing that the will referred to a letter to be afterwards signed', it would be impossible to give effect to any such letter as a declaration of trust. To do so would be to give effect as a codicil to a paper, subsequent in date to the will, and not properly attested,” which is precisely what we are now required to do by giving effect to the unattested entries in the books of account. The Vice-Chancellor added: *584 “ A testator cannot by will prospectively create for himself a power to dispose of property by an instrument not properly attestedand I add, that if so, it is equally certain that a testator cannot by will create for himself prospectively, a power to revoke any disposition of property in his will, by an instrument not properly attested. My further comments upon this ease are, that it is obvious that nearly every argument that has been urged in the present case, to prove that the legacies in dispute have been revoked, might have been urged in that to prove that the bequest, of which the validity was denied, had taken effect: thus it might have been said, that the intention of the testator, as to the operation and effect of the letter he subsequently signed, was sufficiently declared in his properly attested will, with as much propriety as it is here said, that the intention of the testator, as to the operation and effect of the charges in his books of account, was fully declared in a properly attested codicil; so also it might have been said, that the bequest to the trustees was conditional, and was meant to take effect, if a letter declaring its uses should be written and properly signed, and that this condition having been fulfilled, the bequest, as a necessary consequence, was rendered valid, with the same propriety that it is here said, that the legacies to the plaintiff were conditional, and were meant to be defeated if an advancement of equal amount should be made by the testator, and be charged in his books of account, and that this condition having been fulfilled, the legacies, by a necessary consequence, were rendered void.
It was admitted upon the argument, that under our present statute no disposition of even personal property to take effect after the death of a testator can be made, except by a will or codicil executed with all the formalities which the statute prescribes ; and it is quite true, that in Johnson v. Ball, the unattested letter, if admitted as legal evidence, would have operated as a disposition of the property to which the bequest related in favor of the plaintiff; but even this circumstance creates in reality no distinction between that case and the present, for it will now be shown that the charges on the testator’s books of account, if admitted to defeat the legacies to the plaintiff, must also, and necessarily, operate as a new disposition of the whole *585 sum that the legacies embrace; a disposition in favor of the residuary legatee. In all cases, where the personal estate of a testator is more than sufficient for the payment of the debts and legacies, the necessary effect of the revocation of a particular legacy is to increase, by the sum which the payment of the legacy would otherwise require, the residuary fund, and hence, that which is taken away from the particular, is by the same act given to the residuary, legatee; and this even where no words of disposition or gift are used in the instrument or clause of revocation. It is not merely upon this argument that I rest the assertion, for that such is the law, has not only been expressly decided by this court, but by the Court of Appeals. I refer to the case of Kane v. Astor’s Executors, which arose upon the same will that is now before us (5 Sandf. 467). By the sixth codicil the testator revoked entirely two legacies of $25,000 each which by his will, and a prior codicil, he had given to his grand-daughter Louisa, one of the plaintiffs in the suit, and no disposition was made by express words of the sums covered by these legacies in favor of any other person; he also, by the same codicil, revoked several other dispositions of property in favor of the said grand-daughter, but in every other case the property taken from her was devised or bequeathed to some other of his descendants. By the same codicil he authorized his daughter, Dorothea Langdon (the plaintiff now before us), to appoint and give by deed or will to the said Louisa and her issue, one half in value of the real and personal estate, which by the same codicil he had taken from her and given to others. Mrs. Langdon, by an instrument in execution of the power, appointed and gave to Louisa and her issue (I give the exact words) “ such part of the real and personal estate by said codicil taken from the said Louisa and given to others, as by the codicil she was authorized to give and appoint.” Not the least important and (as it was thought) difficult question that arose in the cause was, whether the power £o Mrs. Langdon by the terms of its creation and execution embraced the two legacies of $25,000, which the testator had wholly revoked. It was held by this court, upon the ground that what was taken from Louisa and not in terms given to others, was in effect given to the residuary legatee, that the power did embrace the legacies *586 in question, and that the effect of its execution was to restore to Louisa a moiety of both; and the judgment of this court, although modified in some other respects, was upon this question fully affirmed by the court of ultimate jurisdiction. It is therefore now the settled law of this State that the revocation of a particular legacy, is a gift of the sum it covers to the residuary legatee, as certainly and as fully as if the new disposition were made by express words. The contest, therefore, in this case really is, which shall take effect, the gifts made to the plaintiff by a duly executed and attested will, or those inconsistent with and superseding the former, which are made to the residuary legatee by naked entries in a merchant’s books of account?
The revisers, in submitting to the Legislature the revised statute of wills, declared that in their opinion, “ The admission of parole evidence in any case to ascertain the intention of a testator, is contrary to the whole spirit and policy of the statute, and is calculated to let in all the mischiefs which the statutory provisions were framed to prevent. The whole statute proceeds on the principle that the hazard that in some cases the real intentions of the deceased may be violated, and his bounty be intercepted from the persons he designed to share it, is not to be compared with the danger, that the claims of those who otherwise would be entitled by law, may be defeated by fraud and perjury, if any other than the most certain and solemn evidence of intention is permitted to be introduced” (3 R. S. 2d ed. notes of the Rev. p. 633-4). Nearly thirty years have elapsed since these sentiments were written ; the lapse of time and subsequent- experience have not lessened but deepened my personal conviction of their truth and value, and certainly it would be difficult to imagine a case to which they would apply with a more striking emphasis than to that which we are now called upon to decjde. It is a case wholly free from suspicion; all possible suspicions are excluded by the known character of the testator, of the person principally entitled under his will, and of the witness who has chiefly been relied on to establish the defence; it is therefore certain, that by holding that the legacies in question have not been satisfied and revoked, the intention of the testator, at least as to one of them, will be de *587 feated ; but in my judgment the evil of this violation of intention is not to be compared with the mischiefs that would result from the precedent, that by sustaining the defence, we are required to establish; the temptation that would be created, the wide door that would be opened to collusion, corruption, perjury, and fraud, by holding that an ample fortune bequeathed to a daughter by a will duly executed, published, and attested, may be taken from her and transferred to others, not by a codicil executed with the same formalities, and bearing upon its face the same certain and solemn evidence of the testator’s intentions, but by a naked entry in his books of account, not in his handwriting, nor subscribed by him, nor attested at all, nor proved to be in any sense his act, except by the testimony of a single witness ! From an inmost conviction of its illegality and danger, I deprecate the precedent.
I subjoin a brief summary of the train of reasoning which I have attempted to develop, and which I think is sustained throughout by principle and by authority. The legacies in question are general; as general, they were not satisfied merely by the testator’s transfer of stocks of equivalent value to a trustee for the plaintiff’s benefit; nor can the intention of the testator thus to satisfy them be presumed; a presumed satisfaction is an implied revocation, and all implied revocations, other than those excepted in the statute, are abolished; the claims of the plaintiff, therefore, can only be barred by positive and legal evidence of the testator’s intention to satisfy and revoke the legacies; the charges in the testator’s books of account are not such evidence, and by acting upon them as such we should contradict the plain words of the statute and defeat its manifest intent; we should give our sanction to a revocation by parole, or by a writing not executed with the formalities which the statute prescribes. Nor have these entries in the books been made evidence by the direction given by the testa- - tor to his executors in the first codicil to his will; it was not competent to him by such a direction, or by any other means, to create for himself prospectively the power of altering and revoking by an unattested paper any of the provisions in his will or codicil.
The necessary conclusion is, that no legal proof having been *588 given that the legacies claimed by the plaintiff have been satisfied or revoked, their payment by the executors must now be decreed. And such would be the judgment of the court had either of my brethren concurred with me throughout in the views I have expressed ; but I regret to say that our consultations have not resulted in that unanimity which it is in all cases our wish and study to attain. One of my brethren, Mr. Justice Bosworth, for the reasons that he will give, is in favor of affirming entirely the judgment at special term ; Mr. Justice Campbell is of opinion that the plaintiff is clearly entitled to the payment during her life of the income of the $100,000 of the city debt, given to her by the will, and consequently that in respect to this legacy, the judgment appealed from must be reversed, but in all other respects must be affirmed ; and my own conviction, the grounds of which he will explain, corresponds fully with his, that the entries in the books of the testator, if admitted in evidence, clearly show that his intention was; that the advancement charged should apply, not to the bequest in the will, but exclusively to the Water stock and Trust certificate mentioned in the second codicil. Hence, in order that a final judgment may now be rendered, as for obvious reasons is thought to be desirable by the parties and by ourselves, I shall concur with Mr. Justice Campbell in rendering that which his opinion requires to be given. The judgment at special term must, therefore, be modified, by inserting a declaration that the bequest to the plaintiff' in the will of the testator of the income during her life of $100,000 of the city debt has not been satisfied or revoked; that she is therefore entitled to the payment thereof, with all arrears of interest, and that a judgment for that amount, together with costs of this suit, be entered against the executors. All such parts of the judgment appealed from as are inconsistent with the above are reversed; in all other respects the judgment is affirmed.
Campbell, J.
I assent to nearly all the positions that Mr. Justice Duer has advanced. I think he has clearly shown that the legacies in question are general, and that consequently they were not satisfied merely by the transfer made by the testator of stocks of equivalent value; that in the existing state *589 of the law, we have no right to presume that he intended to satisfy them by this advancement; and that the entries in his books of account are not legal evidence that such was his intention, unless they are connected with the direction in the first codicil. I differ with him, however, as to the construction and effect of this direction. I am of opinion that the undoubted right of the testator to declare that every advancement to be made by him should operate to reduce the provisions in his will in favor of the person advanced, involves and implies the right of limiting and defining the cases in which the advancement should operate as a reduction, and, consequently, the right of confining this effect of an advancement to such as should be charged in his books of account; the intention of the testator as to the operation and effect of the charge in his books is, in my judgment, properly and sufficiently declared in his will; the charges so to be made, in connexion with the advancement to which they would relate, were meant to constitute, and in my opinion do constitute, one entire condition, upon proof of the performance of which, the legacies or other provisions in the will were meant to be reduced or defeated. I am also of opinion, that this condition is lawful, and the charges made, an integral part of the proof of its performance, and consequently that the fact that they were made, was just as susceptible of being proved by ordinary evidence, irrespective of the provisions of the statute, as the fact of the advancement. I am, however, clearly of opinion that the advancement as charged, was never meant to operate as a satisfaction, and ex-tinguishment of the legacy -of $100,000 city debt given by the will; but that it was the plain intention of the testator, that the effect of the trust which he created, and of the transfer which he made, should be confined exclusively to the stocks mentioned and bequeathed in the second codicil to his will; the legacies in that codicil are those he meant to satisfy and revoke, and none other. As my brother Buer concurs in this view of the intentions of the testator, I shall proceed to state briefly our joint reasons for its adoption.
There are four entries in the testator’s books, in which the stocks transferred in trust are charged; in the first two, they are debited to the trustee ; in the latter two, which bear date *590 fifteen months later, to the plaintiff; bnt in each the description of the stocks and of the trust is substantially the same, and the words in each are those of the testator, for it is proved that all were written from his dictation. Hence, to show the application of the remarks intended to be made, it will be sufficient to transcribe the first entry; it is in these words :■
“ Wm. B. Astor in trust for Mrs. Langdon, Dr.
“ For the following stocks transferred to him in trust, as property left to Mrs. Langdon, in similar items, by a codicil of my will, the interest on said stocks being payable to her during her life, and at her death, the interest and principal to her six youngest children now living, in equal proportions-, or the survivor of them as they become of age.”
“To Hew York City Water Stock, &c. . . $100,000
To Hew York Life & Trust Co., &c. . . 100,000”
In his will, the testator bequeaths to the plaintiff {inter alia) the income of “ one hundred thousand dollars of the debt of the city of Hew York, hearing five per cent, interest,” and on her death gives the capital to her then surviving issue; in the second codicil he gives, to the plaintiff during life, the income of “ $100,000, deposited with the Hew York Life and Trust Company and the capital sum, at her death, to her daughters, Eliza, Louisa, and Cecilia,, and to her sons, Walter, Wood-bury, and Eugene, three daughters and three sons, being the six children mentioned in the entry ; and in the same codicil he gives to the same six children “ one hundred thousand dollars of the public debt of the city of Hew York, hearing five per cent, interest, usually called the Water Loan.” The question is whether the testator meant to substitute the $100,000 Water stock, transferred in trust, for the $100,000 of the city debt, of which the income is given to the plaintiff by the will, or for the $100,000 of the debt usually called the Water loan, given to the children by the codicil. We think that it is the last intention that the entries in the books clearly express, and that the words exclude any other interpretation. The following are our reasons:
First. The stocks given by the codicil exactly correspond with those covered by the trust; the “ items” are in all respects “ similarit is true the bequest in the will, like that in the *591 codicil, is of a city debt, bearing five per cent, interest, but it is not of the debt usually called, the Water loan; it is of a debt created at a different time, for a different purpose, payable at a different period, and known by a different name. When the will was made the Water stock had not been created.
Second. We cannot believe either that the testator, when he directed the entries to be made, had forgotten that the bequest of $100,000 of city debt was made to the plaintiff by his will, or recollecting the' fact, that he would have referred to that bequest, as made by a codicil. A codicil is frequently, and not improperly, called a will; that is, the term “ will” is frequently and properly used as embracing codicils; but is a will ever called a codicil ? And could a testator, to whom the distinction must have been familiar, have committed this strange mistake ? We think this most improbable, and hardly possible ; besides, the testator refers not merely to a codicil, but to “ a codicil of his will,” thus marking the distinction, and his knowledge of it, at the very time he is supposed to have forgotten it.
Third. The entries speak of the whole property which the trust covers, as left to the plaintiff by one instrument, “ a codicil but the defendants say that only a moiety of the property meant was left by the codicil, the other moiety being given by the will. But if the testator knew and remembered this ; knew that one half of the property was left by his will, the other by a codicil, is it possible to believe he would have used the language that he has ? would have spoken of, the whole as left by one instrument, and that a codicil ? Or must we suppose that he had forgotten that the bequest of the city debt was made by his will, and believed that it was contained in a codicil three years subsequent in date ? believed that he had bequeathed to her the $100,000 city debt at the same time, and in the same codicil in which he bequeathed to her the $100,000 of the Trust Co.’s certificates? This would indeed be a singular failure of memory, a strange hallucination which we cannot believe ever affected the mind of the testator.
Lastly. The memoranda of the testator on the draft of the second codicil, if admitted in evidence, settle the question; they admit but one interpretation, are unambiguous and conclusive ; they say in terms, that the stocks held by Wm. B. As *592 tor, in trust for the plaintiff and her children, are the identical stocks mentioned in the codicil, $100,000 Trust Company, and $100,000 Water stock.
It is, however, insisted, and has been relied on as a full answer to the considerations that have been stated, that the testator certainly meant to take from the plaintiff, and include in the trust, ¿$100,006 of city debt stock which he had previously left to her; and that no bequest to her of any such stock is to be found except that in the will, to which, therefore, the entries in the books and the trust must be construed to apply, or a plain intention of the testator in the creation of the trust be defeated. How it is quite true, that the language of the testator in the entries, speaking of the $100,000 of Water stock, as left to the plaintiff in a codicil, is inaccurate, since the bequest of the stock in the codicil, is not to the plaintiff, but exclusively to her children; but this circumstance has not shaken our conviction, that it is to this bequest to the children, and not to that to their mother in the will that the entries and the trust were meant to apply; that it was this, and not the other, that the testator meant to satisfy by the advancement. It seems to us, that the error in his language is not difficult to be explained; he may well have considered that which was given to the children, as substantially given to the mother; he may' have considered it as a part of that share of his property, to which he meant that the mother, upon its final distribution, should be entitled; since it is w-ell known that it is upon the principle of regarding what is given to grandchildren as included in the share of their parents that testators frequently regulate the distribution of their estates- We believe that such were the views of the testator, and that he never meant that the trust should cover and satisfy the bequest in the will, which therefore, as unrevoked, must now be satisfied from his estate. Conceding that, if the testator meant to refer to the Water stock mentioned in the codicil, his language, in speaking of stock given to the children as property left to the mother, is inaccurate, it is far more probable that he committed this mistake, than that intending to refer to the bequest in the will, he fell into the strange blunders, that the entries in Ills book thus understood, have been shown to involve. Such blunders would be inexplicable, *593 and it is difficult to believe that they could have occurred; the mistake may well have occurred, and its cause is readily explained; in fact, there is an instance of a mistake exactly similar in the sixth. codicil of the will, which is found in the power which the testator there gives to the plaintiff of restoring to her daughter Louisa one half of all that in the same codicil “ he had taken from her.” Now it is quite certain, that the testator meant that the power, although expressed in these words, should embrace certain interests and property, which in the same codicil, he had taken from the issue of Louisa, as well as those which he had taken from herself, and that such was his meaning was the decision of this" court in Kane v. Astor's Executors, &c., and as I understand, of the Court of Appeals, in affirming our judgment; as the testator, therefore, considered what was taken from the issue, as taken from the parent, he may well have considered what was given to the children as given to the mother; indeed the one implies the other. In the language used, there is in each case the same inaccuracy, the same mistake, and this a mistake far more likely to have occurred, in entries made by the testator in his books of account, than in a codicil prepared upon full deliberation, and under the advice of counsel; finding it in the last, it is not at all a matter of surprise to find it in the first.
Nothing has been said by Hr. Justice Duer in his opinion on the question of election, nor do we think that many remarks are necessary ; we are all of the opinion, as was manifestly that of the judge at special terra, that the doctrine of election has no application to the ease-, if the parole evidence that has been given is admissible at all, it is so to prove the satisfaction of the legacies; if not admissible for that purpose it cannot be received to put the plaintiff to an election. In the English cases in which a subsequent gift is held to be an additional bounty, and not a satisfaction of a prior legacy., and evidence of an opposite intention is therefore excluded, no intimation is to be found that the evidence so excluded may be received for the purpose of putting the legatee to an election, and compelling him to renounce the legacy, or restore the bounty ; indeed it is manifest, that to receive and act upon the evidence for this purpose, would lead to the same result as to *594 hold the subsequent gift to be an actual satisfaction; whatever may be the election made by the legatee he would get nothing, and the complaint would be dismissed. The judgment that in my opinion ought to be rendered is that which Hr. Justice Duer has stated.
Bosworth, J.
The testator made a will dated July 4th, 1836, which was proved before the Surrogate to have been duly published on the 30th of December, 1836. By the first clause of it, he bequeathed to the plaintiff, for her life, the “income” of certain specified “ stocks, debts, and money,” and among others, “the income of one hundred thousand dollars of the debt of the city .of Hew York, bearing five per cent, interest.” The fourth clause of this will, also bequeathed to Mrs. Rumpff for life the income of several funds specifically enumerated in „ that clause. The eleventh clause, amongst other things, provides, that, “ in case any of the stocks or funds herein specifically bequeathed, should not be in my hands at my decease, the several bequests shall be made up by purchases at the expense of my estate of stocks of the same or a similar kind, and to the same amount at their par value.”
The testator made a codicil to this will, bearing date on the 19th of January, 1838, and which was proved before the Surrogate to have been.duly published by the testator on the day of its date, as, and declared to be, a codicil to his last will and testament. The fourth clause of this codicil provides that, “ if the yearly income of stocks and funds given to my daughters, Mrs. Langdon and Mrs. Rumpff, respectively, shall, in any year, fall short of $15,000, then the deficiency shall be made up from my residuary personal estate remaining in the hands of my executors, but if said deficiency shall arise from any temporary suspension of dividends or income, not occasioned by actual losses in the stocks or funds, then such advances shall be refunded from the excess of income over $15,000 per annum after-wards accruing on such funds.” The eleventh clause of this codicil, among other provisions, contained the following, that is to say: “ And inasmuch as I may make advancements or beneficial provisions, for persons or purposes provided for in my will and codicils, it is my direction that such advance *595 ments, if charged in my books of account, shall be deemed so much on account of the provision in my will or codicils in . favor of such persons or purposes.” ■ The word “ codicils” is used twice in this extract from the will, although no codicil, at the time that clause was written, had been executed or published ; this shows very clearly, that by the term “ codicils,” as here used, the testator intended and meant to include any and all codicils that might afterwards be drawn, as well as the one then being drawn. The entire phrase used and repeated is,"“ my will and codicils,” there being at the time of writing it no codicil in existence.
The testator made a further codicil to his will, bearing date January 9th, 1839, and which was proved before the Surrogate to have been duly published by him on the day of its date, as, and declared to be, a codicil to his last will and testament—iprior to this Mrs. Rumpff and one of the children of Mrs. Langdon died. By a clause of this codicil, the testator bequeathed to his daughter Dorothea, “ the income of $100,000, deposited in the New York Life Insurance and Trust Company," bearing interest at five per cent, per annum, to take and receive the income thereof so1 long during her life as she or her husband, present or future, or any one claiming under them, shall not attempt to incumher, charge, or assign the same, in whole or in partand' in case of any such attempt, then he gave the said income to his executors in trust, during her life, to apply the same to her use, for which her own receipt was declared to be a sufficient voucher; upon her death the capital was to be distributed equally among such of her six children as should survive her. The contingency of either of her children being under age upon the death of the plaintiff, as well as other contingencies, were also provided for. The same “ item” of this codicil to the will has this further provision, viz. “ Also I give to the said six children of my daughter Dorothea, or to such of them as may survive me, $100,000 of the public debt of the city of New York, bearing five per cent, interest (usually called the Water Loan), to be paid to each on their attaining the age of twenty-one years ; and the interest of the shares of those under that age to be accumulated for their benefit until that period; and in case any of them shall die before that age, *596 without surviving issue, then his or her shares shall go to the survivors. It will be observed that this $100,000 of Water Stock was bequeathed directly to Mrs. Langdon’s six children, and would become theirs upon the death of the testator. Mrs. Langdon had no right to the income, or the property itself.
The testator made a further codicil to his will, bearing date March 3d, 1841, in the eighth clause of which is a provision in these words, viz. “ And I apply the provisions of the eleventh item of my will to all my codicils, so far as the same can be applied to the subjects thereof.”
The will, each of the codicils heretofore. referred to, and other codicils of different dates, some prior and some subsequent in date to that of the 3d March,1841, were severally and separately republished on the 11th of January, 1845. A new attestation clause was written on each stating, and by it the testator declared, the first instrument dated to be “ his last will and testament,” and each of those of a subsequent date, to ■ be “ a codicil to his last will and testament.”
It will be borne in mind that the only specific funds amounting to one hundred thousand dollars each, the income whereof is bequeathed to Mrs. Langdon for life, either by the will itself or by either of the codicils, are—First, “ One hundred thousand dollars of the debt of the city of Hew York, bearing five per cent, interest.;” Second, “ One hundred thousand dollars, deposited in the Hew York Life Insurance and Trust Company, bearing interest at five per cent, per annum.” The income of the first $100,000 is bequeathed by the will, and of the second $100,000 by the codicil of the 9th of January, 1839.
■ On the -20th of August, 1839, there was charged in the day-book of the testator, and by his special direction, to “ Wm. B. Astor in trust for Mrs. Langdon,” the following stocks, which the day-book entry declared to be “ property left to Mrs. Lang-don, in similar items, by a codicil of my will,” viz.—
Hew York City Water Stocks, five per cents, - $100,000
Hew York Life Ins. and Trust Co. Certificates, five
per cents, - - - - - . - - 100,000
The instrument evidencing the debt of the city is dated the *597 19th of August, 1839, the day prior to that on which this charge was made in the testator’s books. A certificate of the Trust Company, certifying to the deposit of $100,000 upon the trusts stated in the day-book entry, was procured, and also bore date tin the 19th of August, 1839. Each certificate of indebtedness was procured on this day, and a charge of both was made on the subsequent day. The deposit of $100,000 in the Life Insurance and Trust Company, transferred to Wm. B. Astor in trust on the 19th of August, 1839, is the same $100,000 which had been held by Wm. B. Astor, James G. King, and James Gallatin, as trustees of Mrs. Rumpff, and which they transferred to the testator on the 10th of January, 1839, as being her next of kin, according to the- provisions of a deed of settlement executed on the 31st of May, 1834. There can probably be no controversy, that this is the identical $100,000 of stock, the income whereof was intended to be bequeathed to her by the codicil of January 9th, 1839. On the 23d November, 1840, as the evidence tends to show, the certificates of the-.stock which had been charged under date of August 20th,, 1839, were placed in the hands of Mrs. Langdon, and she was-made debtor to the trustee by an entry made on the testator’s, books in these words, viz.—
“ Novr. ,23d, 1840..
“ Mrs. Dorothy Langdon, Dr.
• • “ To Wm. B. Astor, in trust for her, &c.. For-the following stocks, charged said trust account, August 2.0th,. 1839, now handed her, being property bequeathed to- her in. similar items by a codicil of my will; the interest thereon, being payable to her during life, and at her death,, the interest and principal to be paid to her six youngest children now living, or the survivors of them as they become- of age in- equali proportions.
“ Certificate New York City Water Stock, redeemable January 1st, 1858, at five per cent. - - $100;000*
“ New York Life and Trust Company Certificate* redeemable October 1st, 1847, at five per cent.. 100;000
$200,0001’"
*598 A note in the handwriting of the testator was read in evidence by the plaintiff, and was in these words, viz.—
“ Tour certificates of stock are in my iron chest, say $100,000 of City Water Stock, $100,000 of Life Insurance, &c. They are in the paper which you gave me. '
J.*J. A.
30th of Nov. 1840.
“ Tour deed for Hyde Park I will send to be recorded at.”
The date of this paper, it will be noted, is seven days subsequent to that of the charge of these stocks to Mrs. Langdon in the testator’s day-book. The deed referred to in the testator’s note of the 30th of November, 1840, and which he promised to send to be recorded, was in fact recorded on the 3d of the subsequent December, the third day after the date of the note. This is not only evidence tending to show that she had the two certificates in her possession at or about the very day they were charged to her, but also that she had knowledge of the facts which they recite, and of such facts as the matters therein recited would naturally lead her to inquire about, and as, on such inquiry, as a matter of course, it may be supposed she would ascertain. The deed, in terms, declared that the property conveyed by it, had been then recently purchased by the testator, that he intended it as a residence for his daughter, the plaintiff, “ and to give the same to her and her herein named children, without computing the same as any part of the provision made for them in the testamentary disposition of my estate Hence it is obvious, as I think, that the plaintiff knew when the two certificates were put in her possession, or before she entered upon the enjoyment of the income, that her father had previously made a will, and the deed assured her that the property was cumulative to that left to her and to her children by the will: The inquiry would naturally arise; Are the income of the $200,000, and the funds themselves, to be computed as any part of the provisions so made for her and them ? The certificate of the Water Stock which had been in her possession, stated that Wm. B. Astor held it in trust for her and her children, “ on condition stated in ledger of the 14th inst.” That *599 entry, and the other entries relating to the transfer in trust, would inform her, that the funds were delivered ánd charged to her, as being in substance and intent, items of property actually bequeathed to her by the will. When contrasted with the language of the deed, and in connexion with the facts, which it is reasonable to presume came to her knowledge, the natural inference would be, that she accepted them knowing that they were to be computed and treated as satisfying the bequests themselves. I cannot therefore assent to the proposition, that there is no evidence that she accepted of the stocks without any notice that a will had been made, or that the transfer was made with an actual intent to satisfy pro tanto, some of the bequests in hér favor which it contained. No charge is made against Mrs. Langdon, of the property conveyed by the deed, while the stocks are charged as being the property bequeathed to her “ in similar items,” or in other words, “ as advancements for persons or purposes provided for in my will and codicils.” Property had been bequeathed to her in similar items by the testator; no other similar items had been then or were subsequently bequeathed to her. One of the “ items ” answering in description to that conveyed in.trust, and charged as property bequeathed to her, was specifically described in the codicil of January 9th, 1839, as “ one hundred thousand dollars deposited in the New York Life Insurance and Trust Go., bearing interest at five per cent, per annum.” This specific stock was transferred in trust for the benefit of Mrs. Langdon, in the lifetime of the testator, and charged to her as being the property of that description which he had bequeathed to her : instead of the commencement of her reception and enjoyment of the income, being postponed until the death of the testator in 1848, he gave her the power and right to enjoy it from the 20th of August, 1839. So far as this item is concerned, he transferred to her use in his lifetime, the whole interest in it, which he had bequeathed to her by the codicil to his will; and so far as actual intent can be determined, by his acts contemporaneous with the transfer, and as declared by the codicil itself, the transfer was made with the actual intent to satisfy this legacy. At the time of making this transfer, he transferred another item of $100,000: and' both items were made *600 the subject of a single charge in his day-book. It seems to me perfectly clear that the transfer of the' two items was made with the samé actual intent; both are charged, as being property left her in similar items' by a codicil in his will; both are transferred in satisfaction of similar items, which, the charge of them, asserts had been bequeathed to her by the testator. He had made bequests to her, of the income of two specific items of $100,000 each; each bearing interest at five per cent. The income of $100,000 of the debt of the City of Hew York, was bequeathed, or left by the will and that only; no income of any such item of $100,000 was bequeathed or left to her by any codicil. I shall assume, for the purpose of considering the effect of this transfer, under the circumstances, and the book-entries accompanying it, and the provisions of the codicil, that the $100,000 of City Stock' so transferred was in the mind and contemplation of the testator, the identical $100,000 of thé 'City Public Debt, the income whereof, he bequeathed to the children of Mrs. Langdon, in the codicil of January 9th, 1839. He there describes it, as $100,000 of the “ public debt of the City of Hew York, bearing five per cent, interest,” and adds, in parenthesis, “ that it is usually called the Water loan.” By the will he had bequeathed to her the income of $100,000 “ of the debt of the City of Hew York, bearing five per cent, interest.” The two descriptions, omitting the words in parenthesis, are identical, with this difference, that in the one it is. denominated the public debt, and in the other simply “ the debt,” of the City of Hew York: the principal amounts are the same, the rate of interest is the same, and the source from which payment of the income was to be derived is the same ; income only was bequeathed ; it was the income of debt of the City of Hew York amounting to $100,000, and to be at the rate of five per cent, per annum ; this she would be entitled to under the will; in satisfaction of the income thus given by the will, the testator, with an actual intent to satisfy this bequest, transferred to her in his lifetime, and to be enjoyed during her life, the income of $100,000 of City Debt, drawing interest at five per cent., and charged her with it, as property left, or bequeathed to her in a “ similar item ” by a codicil of his will.. He had bequeathed her a similar item, if *601 not one identical in each of its elements and properties, not by any codicil, but by the will itself. There is no misdescription of the actual bequest. The entry in the day-book, is literally accurate, as to the fact of a bequest having been made, corresponding in its description with the thing bequeathed, and charges it as a transfer of the thing actually bequeathed; the misdescription is of a fact wholly immaterial; it is of the particular instrument by which the bequest was made and not of the thing bequeathed : if a codicil is sought which bequeathes a similar item, the search will be fruitless, for there is none which contained any. Qui Jmret in Uttera, Jmret in cortice. If nothing but a codicil can be looked at to ascertain the actual intent of the testator in making this transfer and charge, the conclusion must be that the testator made a very great mistake, and transferred $100,000 to satisfy a bequest which he erroneously thought he had made, and charged it as being property which he had actually bequeathed to the person to whose use he transferred it, when in fact he had not made, nor intended to make, any such bequest at all. But if the substance of things is to be regarded, it is manifest that by the transfer the testator intended to then give an item of property, which he had bequeathed by his will, and allow the object of his bounty to enter upon the enjoyment of it then, instead of postponing such enjoyment until his death, and that he had not the most remote idea of giving the income of an item of $100,000 of debt, in addition to the income of a similar item bequeathed by his will: he declared in the charge made of it, that it was the property which he had bequeathed to her in a similar item and evidently designed it as a transfer of the actual thing and in satisfaction of the bequest. If the clear actual intent of the testator is to prevail, there is no difficulty in disposing of the main questions presented by the appeal.
There can be no doubt, on looking at the will and codicils, that he intended to give to the plaintiff, the income of two separate enumerated funds of $100,000 each, bearing interest at five per cent.; looking at these instruments alone he intended to give her the income of only two such items ; if he had not made the transfers in his lifetime, the plaintiff does not pretend to any right tó the income of more than two such funds ; *602 but transfers were made of two such items; at the time of the transfer he charged the items so transferred as being the very things he had bequeathed, and the codicil declares that he intended them as a satisfaction of the bequests. Hay the plaintiff retain, them, with the evidence there is that she took them with knowledge of this intent, divested of the purpose, and contrary to the actual intent of the testator; and insist, as a matter of right, that the executors shall purchase other similar items, and pay her the income, notwithstanding she is in the enjoyment of the income of property transferred by the testator, as being the identical property, and the whole of the property forming the subject matter of these two bequests ? If she may, it is because some stringent rule of law gives her a right to demand, what the testator clearly never intended to give, and instead of his manifest intent being the purpose to be effectuated, some inflexible rule of law must be enforced in opposition to, and to the defeat of his intention. I do not understand that any such obstacle exists to giving effect to the purposes and intentions of the testator. The general rule is, that where a parent bequeathes a legacy to a child, and after-wards gives a portion, or makes a provision for the same child in his lifetime, without expressing it to be in lieu of the legacy, the portion or provision is deemed to be a satisfaction of the legacy. In such a case, if the portion so received, or the provision so made, is equal to, or exceeds the amount of the legacy; if it be certain, and not merely contingent; if no other distinct object be pointed out, and if it be ejusdem generis, then it will be deemed a satisfaction, or as it is more commonly termed, an ademption of the legacy. ■ (Story’s Equity, 2d vol., § 1108 to 1112, inclusive, and cases there cited.) The book entries, instead of anything in them being in conflict with this intendment of the law, tend to show'the purpose of the testator to have been precisely such as the law presumes it was. I agree entirely with the learned judge who decided this action at special term, that the republication of the will in 1845, did not have the effect to revive a legacy in it, which had been previously satisfied, or in other words, did not have the effect to duplicate all such legacies (Powis v. Mansfield, 3 Mylne & Cr. 359; Paine v. Parsons, 14 Pick. 318 ; Moneypenny v. *603 Bristow, 2 Rus. & Mylne, 117; Bensusan v. Nehemias, 4 L. and Eq. 140.) I think the true construction of a codicil is, that the will is to have the effect which it would- have had, if the codicil had not been made, except as altered by the codicil ; and that if the double provision would not have taken place if the codicil had not been made, it will not be set up by that codicil, unless the codicil manifests by its terms a clear intent to make a double provision. (Booker v. Allen, 2 Rus. & Mylne; 270.) Hence it was said in Moneypenny v. Bristow, that although as a general rule, a codicil makes a will speak as of its own date, so far as to be effectual to pass all the real estate then owned by the testator, yet, “ it may nevertheless be framed in such a manner ” (in this respect) “ as to operate as a partial republication only, or to work no republication at alland in Stillwell v. Mellersh (5 L. and Eq. 185, 191), that, when it is said republishing a will makes it speak of the latter date, “ that does not mean, that you are to read the will in any way different from the mode in which it would have been read, if the testator had died the moment after he had executed it.” Hence, whether there be merely a will, strictly so called, or a will and codicils, the actual intent of the testator is to be sought, and when -that is manifest, whatever difficulties may embarrass the case, it is the duty of the Court, if possible, to give effect to all the provisions of the'will and codicils, in conformity with such intent.
It is insisted, however, that, if the delivery by the testator to the legatee, in his lifetime, of things similar -in all respects to those bequeathed, as being the things bequeathed, is to be allowed to operate as a satisfaction or ademption of the legacies, then the statute in relation to revoking and cancelling wills will be practically annulled. (2 E. S. 64, §§ 42 to 53.) According to Kirk v. Eddowes, 3 Hare, 518, this is an untenable position: “ The evidence does not touch the will; it proves only that certain transactions took place after the will was made, and calls upon the Court to decide whether the legacies given by the will are not thereby adeemed. Ademption of the legacy, and' not revocation of the will, is the consequence for which the defendant contends, a distinction which is marked by Lord’ Hardwicke, in the case of Roswell v. Bennett (3 Atk. 77). *604 The defendants do* not say the will is revoked: they say, the legatee has received her legacies by anticipation; that where things bequeathed, or things ejusdem generis, of. the same amount or value, have been delivered to the legatee, in his lifetime, especially if delivered as • being the things bequeathed, and if accepted by her, the subsequent transaction as well as the will, must have its intended effect. A party claiming under such a delivery, and having taken- the benefit of it, could not claim that benefit, and at the same time refuse to give full effect to it.” (Kirk v. Eddowes, 517.) I deem it an exceedingly technical use of language and an unnecessary confusion of ideas, to say that the will is altered or revoked. The legatee takes, and has precisely what the will gives her, and in the manner it gave it to her. In addition to that, by satisfying the legacy in the lifetime of the testator, the legatee has enjoyed the thing bequeathed, for so long a period before she was entitled to it by the will, as elapsed between the time of satisfying the legacy and the death of the testator: she has the thing 'bequeathed, and has had it continually, from the moment of the testator’s death. But because she was allowed to take and enjoy it before his death, although given as the very thing bequeathed, it is urged that she has not got and has never received her legacy, and she demands that it be delivered to her, notwithstanding she has it in her exclusive possession and enjoyment. The 2 R. S. 64, § 42, omitting the excepted cases, is in substance the same as § 3 of 1 R. L. p. 365. The former says, that “ no will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked or altered the latter declares, “ that no such last will and testament duly executed as aforesaid, or any part thereof, shall be revocable or be altered,” &c.; the latter exempts no such cases from its operation, as are excepted by § 42 of 2 R. S. 64. Yet, as a will takes effect, only from the. time of the death of the testator; if he does not then own property specifically devised or bequeathed, it does not exist for the devisee or legatee to take, and if it had been conveyed or disposed of intermediate the making of his will and his death, the nature and effect of the transaction are indicated by the ex pression, that he' had revoked Ms will pro icmto; and such *605 revocations, so called, occurred with respect to wills, under 1 R. L. 365, § 3, notwithstanding that section declared such wills irrevocable, except by a paper executed with the formalities requisite to a valid will. It will be seen by reference to 2 R. S. 64, sections 45, 46, 47, and 48, so far as they relate to revocations by an actual transfer of property, that they look only to cases of revocation, partial or total, caused by an alienation to third persons, of the property bequeathed or devised, and have no bearing upon cases, or the law applicable to cases, where nothing has been done to interfere with carrying into full -effect the intent of the testator, in respect to any specific devise or bequest; as where the devisee or legatee has received the very thing devised and bequeathed, from the hands of the testator; or a similar and equivalent thing, in anticipation or satisfaction of the bequest, instead of having the receipt and -enjoyment of it postponed until his death. The whole effect of these four sections, expressed in common language, is simply this : Although a testator by will, makes a devise of real, or a bequest of personal property, yet his power to alien, or deal with his property, is not affected; and if before he dies, he disposes of it absolutely, and has received full payment, the devisee or legatee has no -claim under the will, because there is found at the testator’s death nothing for him to take ; but if he has only agreed to -convey, or has encumbered the thing devised or bequeathed, the devisee or legatee, shall in the former case be entitled to the unpaid purchase money, and in the latter to the property subject to the encumbrance fou»d thereon (Adams v. Winne, 7 Paige, 97). It does not render a satisfaction of a legacy by the testator in his lifetime a nullity, merely because the transaction is not authenticated by an instrument executed in the form requisite to a valid will. The language of § 47 recognises the existence of the rule, and does not, by its terms or by implication, purport to affect or alter the rule, that if the testator, in his lifetime, wholly divests himself of his interest and estate in property devised or bequeathed, such act shall be deemed a revocation of the devise or bequest; it only alters the pre-existing rule so far as to declare that a partial divesting of such interest, shall not alone, and of itself, be deemed to, or absolutely work an entire revocation, but that *606 the actual interest of the testator in it at the time of his death shall vest in the devisee or the legatee. If the construction now sought to be given by the plaintiff to the Revised Statutes cannot be upheld, but must be rejected, -if there is a single case other than those specially excepted, in which the revocation of a will in the sense in which that word is used in adjudged cases, may be effected, then such construction, as I think, must be rejected. The statute says nothing about implied revocations; it is peremptory that no will shall be revoked or altered, in whole or in part, “ except in the cases hereinafter mentioned,” and in the manner therein stated: "What are the cases thereinafter mentioned %
1st.' Burning, tearing, cancelling, &c. (§ 42.)
2d. Subsequent marriage, issue born, and survivorship of issue, or of a wife. (§ 43.)
3d. Subsequent marriage of an unmarried woman. (§ 44.)
4th. A bond, agreement, or covenant of the testator to. convey. (§ 45.)
4th. A charge or incumbrance upon property devised or bequeathed. (§ 46.)
5th. A conveyance, &c., by which a testator’s interest or estate in property previously devised or bequeathed “ shall be altered but not wholly divested.” (§ 48.)
6th. The subsequent birth of a child, not provided for by the testator in his lifetime, nor in any way mentioned in his will. (§49.)
This completes the list of excepted eases, and does not include the case of a conveyance, deed, or other act of a testator, by which his estate or interest, in property, previously devised or bequeathed by him, shall be wholly divested. The statute is silent as to such a case; yet the subsequent grant of real estate devised, or the absolute disposition of a specific legacy, would in fact be a revocation pro tcmto, and no one, I'presume, would question its validity. I do not understand the statute as affecting any such cases, or as modifying the law as previously settled in relation to the ademption of specific legacies, or the actual satisfaction of general legacies, or as repealing or modifying any pre-existing rule relating thereto. It is insisted, however, that the rule apparently well settled in England, *607 that an advancement to a child of a thing similar in all respects to one previously bequeathed, shall be presumed to be in satisfaction of it, should not be followed. I do not feel at liberty to reject it, because I may suppose it had its origin in some considerations of policy which do not prevail in this country, especially when the rejection of it must result in violating the manifest intent of the testator; such action seems to me more like judicial legislation, than ascertaining and declaring what is the settled rule of law. I understand it to be conceded, that if the eleventh article of the codicil of January 9th, 1838, had declared that all advancements or beneficial provisions which the testator might, in his lifetime, make to or for the persons provided for in his will and codicils, shoxild be deemed a satisfaction, in whole or in part, as the case might be, of a provision made for them in the will or codicil; that a subseqxxent advancement or beneficial provision, would have the effect to satisfy the provision contained in the will, whether the effect produced be properly denominated .ademption or revocation. It is said, that, in such a case, the testator would have provided by an instrument, executed with all the formalities requisite to a valid testamentary paper, that an actual advancement should be a revocation, and nothing would remain to be shown but the fact of an advancement; that fact being shown, the intent of the act and its effect would not depend upon the xmóertainties of the evidence which might, but for the statute, be given upon the question of the intent of the act, but the intent would be found in the expressions of the will itself. If this view be sound, it seems to me hypercritical to say, that a provision in a will declaring that all “ charged advancements” to or for any pei'son or purpose provided for in his will, should have the effect of reducing the provision in favor of such person or purpose, is invalid and ineffectual. If, in the one case, the intention of the testator in making the advancement woxild appear in the will itself, I do not see why it would not in the other. The terms of the charge do not declare, nor attempt to declare, the intent with which the advance was made. The codicil does not attempt to pi’ovide for, or to reserve to the testator the power of making entiles in his books, which are to state the intent of his subsequent acts, to the end that his *608 intent with respect to subsequent acts shall be thus evidenced, and that effect shall be given to the intent as therein and thereby declared; but the codicil declares that, at the time of executing it, it is his intent, and he thereby evidences his intent, that all subsequently charged advancements “ shall be deemed so much on account of the provision in my will or codicil in favor of such persons or purposes.” In the one case, the fact of the advancement alone would remain to be proved} in the other, two facts, the advancement, and the charge of.it: in each ease the intent is determined by the will; the terms of the charge do not declare the intent, and are not looked at to ascertain or determine it, but the will declares it; it does it as absolutely in the latter case, as in the former. The . satisfaction is worked by subsequent acts, in both cases; in the one case by a single act, in the other case by two. The terms of the charge express no intent, and if no inference or presumption of law in. relation to' the intent arises from the mere act of advancing, the entries* even if competent evidence, would alone prove nothing as to the intent, any more than the fact of an advance to ¡persons provided for in the will, who were in no way related to the testator. The-codicil does not provide for making entries, by which a different -disposition is to be effected from that provided for in the will, or by which evidence of intent is to be created which would not exist without them; it declares a then existing intention to make advances, in satisfaction in whole or in part, of the legacies .given- by the will. If it be competent to say that -a certain act shall be a satisfaction, which would not presumptively be -so but for such a provision, I see no objection to declaring that two acts may be, when one of them would he so, without such a provision, unless a rule long settled is to he now judicially repealed. The mere fact of an advancement to a stranger, to whom a pecuniary legacy was given by the will, would not of itself, in judgment of law., be a satisfaction; but on the ground conceded, a provision in the will that all advancements should work a satisfaction of precisely similar gifts, would give to a subsequent advancement that effect. The mere fact of an advancement to a child, when there are no other facts in a case, will in judgment of law satisfy a legacy, precisely simi *609 lar, given by the will, unless a new rule of law be declared. If the conceded doctrine be sound, I cannot see why a provision that every charged advancement shall be a satisfaction, will not be equally effective, or why the intent of the testator, in making it, is not as emphatically evidenced by the will itself, and by that only, as in the case supposed.
I cannot resist the conclusion that the judgment appealed from should be affirmed, unless the entries made by the testator, in the margin and on the back of the draft of the codicil of January 9th, 1839, should have an effect given to them beyond that to which, in any view I can take of them, they are entitled. The entry in the margin of the draft of this codicil states that the stock “ alluded to” in that codicil “ has been transferred to Mrs. Langdon and her children;” it does not state for what purpose, or with what intent the “ transfer” was made. When the entry was made does not appear, but it must have been subsequent to the transfer to Mrs. Langdon. The entry on the back, dated a year subsequent to the transfer, states that “ the stock here given” (not saying how, or to whom given) “ is the same which Win. B. Astor holds in trust for Mrs. Lang-don and children. J. J. Astor, October 1st, 1840.” The book entries made, when the stocks were delivered to Wm. B. Astor in trust, charge them as being “ property left to Mrs. Langdon, in similar items, by a codicil of my will.”
Then these principles are to be applied to the facts of the case. The will and codicil having bequeathed to her the income for life of two certain funds, very specially and minutely described, of $100,000 each ; and the testator having in his lifetime advanced to her, for the .purpose of satisfying the legacies, the same funds, or two funds each of the same principal amount, bearing interest at the same rate, and owing by the same debt- or, and each similarly secured, the presumption of law, in the absence of all extrinsic proof, is, that they were transferred in satisfaction of the legacies. That rule of law must be applied in this case, unless this court has the power, and may properly abrogate it, or unless the revised statutes have repealed it. The court should not attempt to abrogate it, whatever may be its views of the origin of the rule, or of the policy, from which it sprung, when such action would violate, rather than give effect *610 to the clear intent of the testator. The revised statutes have no relation to the ademption of specific legacies, or satisfaction of general legacies ; having no relation to them, they do not repeal or modify any pre-existing, well-settled rule applicable to them. These legacies, therefore, if as clearly specific in judgment of law, as they evidently were in the mind of the testator, have been adeemed; if viewed as general legacies, in judgment of law, they have been satisfied. Instead of there being any extrinsic evidence in conflict with tins intendment, the will itself declares, that all charged advancements subsequently made, shall be a satisfaction of similar or equivalent legacies given by the will. The testator having bequeathed to the plaintiff the income of two funds of $100,000 each, subsequently advanced her the same things, and charged them as property which he had bequeathed to her, in similar items, by a codicil to his will. The intent of the testator in making this charged advancement, as declared by the will itself, is the same, as the law from the act of advancing presumes it to have been, viz. to satisfy the legacies. The intent should be carried into effect. The fact that no item of city debt had been bequeathed to the plaintiff by the codicil, but was bequeathed by the will, is nominal and immaterial; it does not relate to the fact, nature, or amount of the bequest, but to the part of the instrument by which it is given ; Nil facit error nominis cum de eorpore constat. It should not be forgotten that, the plaintiff accepted of the transfers knowing that a will had been executed. It may be reasonably inferred that she knew the property transferred was delivered to her, as being property bequeathed to her, in similar items, and to satisfy bequests actually made in her favor.
If the facts of the case, and the rules applicable to them, have been correctly stated, there would seem to be no escape from these conclusions.
1st. The will and codicils give to Mrs. Langdon the income of two distinct funds of $100,000 each, and of two only.
2d. The income of these funds, or of funds substantially like them in all respects, were transferred: to' her by the testator in his lifetime.
3d. The law presumes he advanced them with intent to satisfy *611 the legacies; he advanced and charged them as being, in substance and effect, the very things he had bequeathed, and with intent to satisfy the bequests.
4th. The intent of the act, as declared by the will itself, is the same as the law presumes, and all the evidence shows it to have been, viz. an intent to satisfy the legacies.
5th. The revised statutes have no relation to the matter of satisfying legacies, and therefore do not abrogate or modify any pre-existing, well-settled rules relating to that subject.
6th. The court will not abrogate any rule of law, on account of its view of the considerations of public policy, in which it may think the rule had its origin, when the effect of such an act will be to overthrow and defeat the intent of the testator.
7th. The legacies having been attempted to be satisfied, and the evidence tending to show that the plaintiff accepted of the transfers, knowing they were made, as being transfers of property bequeathed to her, there is no reason why effect should not be given to the transaction, according to the intent of the testator, as presumed by law, declared by the will, and established by the whole evidence:
I think the judgment should be affirmed.
Judgment reversed as to the legacy of $100,000 city debt, in all other respects affirmed. Plaintiff’s costs to be paid from estate.

 A pecuniary legacy is also specific when it is given for a single definite purpose, as the building of a house, or a portion upon marriage, for in these cases, if the purpose is accomplished by the testator in his lifetime, the legacy is adeemed in the proper sense of the term; but to this class of legacies it was not thought necessary to advert in the opinion.

 Vide Tifft v. Porter, 2 Seld. 516.

 The word “ estate,” if not connected with words of local description, in a will, carried the fee; in a deed, unless words of limitation were added, passed only a life estate.

 On page 114, this accurate and judicious writer says, that where a legacy from a stranger is general, to admit parole evidence to prove that he intended by a subsequent gift to adeem the bequest, would be “ to revoke a legacy by parole;’’ and on page 196, that in such a case “ parole evidence of the testator’s intention to substitute the gift for the legacy, and thus to defeat the latter, is inadmissible.’